THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD C. HUDSON, Defendant-Appellant.

(No. 52935; ▇▇▇▇▇▇▇▇▇▇)

First District—December 8, 1970.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Roger S. Matelski, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

The defendant, Howard C. Hudson, was indicted for the sale of a narcotic drug in violation of Ill. Rev. Stat., ch. 38, par. 22—3. After a trial by jury, he was found guilty and was sentenced to the Illinois State Penitentiary for not less than ten nor more than fourteen years.

On appeal, the defendant raises four points: (1) there was insufficient evidence to prove that the substance in question was cannabis sativa (marijuana) in accordance with the statutory definition of narcotic drugs; (2) reference by the State during trial to other crimes violated defendant's right to a fair trial; (3) the court failed to instruct the jury concerning the essential elements of the offense; and (4) the prosecutor's closing argument was inflammatory beyond allowable limits.

At trial, Donald Norton testified that he was an Inspector with the Illinois Division of Narcotics and had been so employed for seven and one-half years. He stated that he first met the defendant on October 10, 1966, at a restaurant called "The Hut" in Evanston, Illinois. Norton was

seated in a booth with three other persons (Miller Riley, Rogers Nugent and Ann Croft) when the defendant approached and stated, according to Norton, "that I was supposed to do business with him that night and not the other two individuals I was with." Norton, who was operating undercover by the name of Danny, told the defendant that he was busy and might talk to the defendant later.

Norton stated that he next encountered the defendant on October 17, 1966. On that date, Norton and his partner, Inspector Charles McKissack, went into "The Hut" and saw the defendant sitting at the counter. McKissack was operating under the name of Chuck at this time. The three men exchanged greetings and sat in a booth. Norton testified that McKissack inquired about purchasing a "couple of cans" and the defendant quoted a price of $50.00 for two "large cans." The defendant then left the booth to make a telephone call. Norton stated that when the defendant returned from the telephone, he told them that "everything was mellow, and that we could cop," *i.e.*, purchase drugs.

Norton testified that he next saw the defendant on October 27, 1966, and again on November 8, 1966, when the defendant was arrested.

On cross-examination, the witness testified that he was introduced to the defendant on October 10, 1966, by Ann Croft, who had supplied information to the State Division of Narcotics on prior occasions.

On redirect examination, Norton indicated that Miss Croft accompanied him to "The Hut" for purposes of introducing him to an individual named "Frog." When asked, "Who is 'the Frog'?" the witness replied, "Howard Hudson."

John Carsten testified that he was a narcotics agent with the Illinois Division of Narcotics and had been so employed for three and one-half years. He indicated that he first met the defendant about 8:00 P.M. on October 27, 1966. Carsten was with Inspector McKissack in an unmarked state vehicle which they parked on the street in front of "The Hut." McKissack pointed out the defendant, who was standing in front of the restaurant. McKissack left the auto and engaged the defendant in conversation. Carsten stated that he then saw the defendant enter the restaurant, leaving McKissack on the street. A few minutes later, the defendant came out of the restaurant and then walked over to the car with McKissack. McKissack introduced Carsten to the defendant. Carsten stated that the two men got into the auto and he drove to the intersection of Church and Darrow Streets in Evanston. There, according to Carsten, the defendant instructed him to park near the intersection and left the vehicle for about twenty minutes. When he returned, the defendant said, "I am unable to find my man." Carsten made a U-turn and drove back to the intersection of Church and Darrow and the defendant

said, "There he is now. Stop the car." Carsten indicated that he did not see this other individual but stopped the auto. The defendant got out and returned a short time later and said, " I have the stuff but left—." Carsten then testified that the defendant suggested that they go back to "The Hut" so they "could get the acid." Carsten, however, said: "As long as we have the pot in the vicinity here, let's pick it up now and we can go back to The Hut later." Carsten stated that he then drove around the block and again stopped the car. The defendant left the vehicle "and walked in between two houses into a gangway and returned a few seconds later. In his hand he had two Manila envelopes which he handed to Inspector McKissack." Carsten stated that McKissack then gave the defendant $20.00.

On cross and redirect examinations, Carsten testified that the defendant was not arrested on the night of October 27, 1966, because the defendant had agreed to deliver further amounts of marijuana in the future. No further sales were made, however.

State narcotics inspector Charles McKissack testified that he first met the defendant on October 17, 1966, at "The Hut" in Evanston, Illinois. He was introduced to the defendant by Inspector Norton.

McKissack stated that he next saw the defendant on October 27, 1966, at "The Hut." On this occasion, McKissack was with Inspector Carsten in an auto which they parked in front of "The Hut." McKissack saw the defendant standing in front of the restaurant and went over to speak with him. McKissack indicated that he spoke briefly with the defendant and asked: "Can you still do what you said you could do on the phone"? The defendant said "that he thought he could, but he would have to make a phone call first to find out if everything was all right." McKissack then testified that the defendant went into "The Hut" to make a phone call and, after completing his call, returned and said that everything was all right and "that we could come with him and he would take us to a place where we could buy marijuana." McKissack and the defendant then got into the auto and the defendant instructed Carsten, the driver, where to go. On one occasion, the defendant told Carsten to stop the car and left the two inspectors for a short time. When he returned, the defendant indicated that he couldn't find "the man." Carsten then made a U-turn and the defendant said, "There is the man," and instructed Carsten to again stop the car. McKissack stated that he saw a Plymouth or Dodge with a man in it. The defendant left the auto and disappeared into an alley. When he returned, according to McKissack, the defendant said, "Everything is mellow, we can cop." He then asked McKissack for the money and McKissack gave him twenty dollars. The defendant then went into the alley again and, about forty minutes

later, came back in an auto with "the man." The defendant again disappeared for a few minutes and, upon returning, said: "I have hidden the marijuana, let's go get the LSD." McKissack then stated that Inspector Carsten suggested that they get the marijuana first and they did so. McKissack indicated that the defendant gave him the marijuana. Shortly thereafter, the defendant left the company of the inspectors. The inspectors then proceeded to their office and, after properly securing the substance supplied by the defendant, sent it to the Chicago Crime Laboratory for analysis.

On cross-examination, Inspector McKissack testified that when he first met the defendant on October 17, 1966, he engaged the defendant in a conversation "relative to my purchasing marijuana." He further stated that he did not arrest the defendant on October 27, 1966 [the date of the transaction]. The arrest was made on November 8, 1966, with the following law enforcement personnel participating: Inspector Norton, Detectives Marshall Barksdale and Davis Schram of the Evanston Police Department, Sergeant Jerry DeGross of the Evanston Police Department, and the witness, Inspector McKissack. Inspector Carsten did not participate in the arrest.

On redirect examination, McKissack testified that no arrest was made until November 8, 1966, because it was not until then that the inspectors had determined that the defendant would not be of use in the development of cases against other offenders in the area. McKissack also testified that he had a phone conversation with the defendant on October 26, 1966, and, in relating the conversation, stated: "Mr. Hudson answered the phone and I said, 'This is Chuck.' And he didn't remember, or said he didn't. He said, 'Chuck who'? I said, 'Chuck, from Chicago. You remember, I was up there and bought some stuff from you the other day' "? According to McKissack, the defendant then stated that he had some "acid" and some marijuana to sell and the two men agreed to meet at "The Hut" the next evening.

On recross examination, McKissack indicated that on the night of October 27, 1966, after the defendant gave him the two packets of marijuana, they drove to the vicinity of Sherman and Clark Streets in Evanston and stopped. The defendant asked McKissack for an additional $25.00 and McKissack gave him the money. Then, the defendant left the auto and disappeared for about ten minutes. Continuing, McKissack stated: "He came back to the car and handed me a white plastic bottle, the type that you use for nasal sprays, or something like that, and he handed it to me and told me the quality or the strength of the LSD, and that sort of thing." McKissack stated that he and the defendant then had a brief conversation "relative to make additional purchases of marijuana

and LSD." McKissack further stated that a chemical analysis of the contents of the bottle proved "negative as to a narcotic and negative as a dangerous drug."

Sergeant Charles Vondrak, a chemist with the Chicago Police Crime Laboratory, testified that he had analyzed the substance [contained in the packets which were given to McKissack by the defendant] and found that it weighed 3.7 grams and was "cannabis, commonly referred to as marijuana."

Officer Marshall Barksdale of the Evanston Police Department testified that he participated in the arrest of the defendant on November 8, 1966. At the time of arrest, the defendant was riding in an automobile with Inspectors Norton and McKissack. Barksdale, driving an unmarked squad car, pulled the inspectors' auto over to the curb and effected the arrest.

On cross-examination, Officer Barksdale testified that he had a warrant for the arrest of Howard Hudson on November 8, 1966.

The defendant's age was stipulated to be twenty years.

The defense introduced evidence of the defendant's good character through Ozella Pratcher, a co-employee and long-time acquaintance of the defendant, and through Reverend Carlis Moody, the pastor of the defendant's church.

Initially, the defendant contends that the evidence was not sufficient to establish that the substance in question was cannabis sativa as defined by statute. The statutory definition, contained in Ill. Rev. Stat. 1965, ch. 38, par. 22—2—17, reads as follows:

"Narcotic Drugs" means any of the following:  *  *  *  (3) "Cannabis" includes all parts of the plant Cannabis Sativa L. (commonly known as marihuana), whether growing or not; the seeds thereof, the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; *but shall not include the mature stalks* of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of *such mature stalks* (except the resin extracted therefrom) fiber, oil or cake, or the sterilized seed of such plant which is incapable of germination  *  *  *. [Emphasis added].

Defendant argues that the testimony of Charles Vondrak, the police lab chemist, established only that the substance in question was marijuana, *i.e.*, of the plant Cannabis Sativa L. This testimony, defendant argues, was insufficient to prove that the substance, although marijuana, was a narcotic drug within the meaning of the statute because there was no showing that none of the statutory exceptions, *e.g.*, "mature stalks of

such plant," was applicable. The defendant contends, in effect, that unlawful marijuana is defined by the exceptions, by what it is not, and suggests that the State has the burden of showing that the marijuana did not come from an excepted part of the plant.

The defendant relies heavily upon *People v. Lott* (1962), 24 Ill.2d 188, 181 N.E.2d 112. In *Lott,* the defendant was charged with the sale, possession and dispensing of narcotic drugs. At Lott's trial, a chemist from the Chicago Crime Detection Laboratory testified *on cross-examination* that he subjected contents of certain cigarettes allegedly sold by defendant Lott to Chicago police officers to chemical and microscopic tests and determined that the substance was composed of certain *mature portions* of the cannabis plant. [Emphasis added]. Lott was found guilty by the trial judge who, in giving his reasons for his decision, stated that the defendant thought he was selling marijuana. On appeal, Lott raised an issue identical to the one raised in the instant case, *i.e.,* that the articles sold were not proven to be narcotic drugs under the statute. While it recognized the general rule that when a criminal statute sets forth an exception, which exception operates to prevent an act otherwise included in the statute from being a crime, the burden is on the defendant to bring himself within the exception, the Illinois Supreme Court found that the defendant had brought himself within the exception by establishing, through cross-examination of the chemist, that the substance analyzed consisted of *mature* portions of the cannabis plant. In addition, the Court recognized that the crime of selling an article under the representation that it is a narcotic drug, when in fact it is not, is separate and distinct from the charges of selling or possessing or dispensing a narcotic drug. (See Ill. Rev. Stat. 1965, ch. 38, par. 22—40.) Thus, Lott's conviction was reversed because the State had failed to meet its burden of proof after the exception issue had been raised by the defendant and because the trial court had found the defendant guilty of a crime for which he had not been indicted.

■■ In the case at bar, we find no evidence which shows that the defendant met his burden of establishing an exception under the statute. In addition, we find no indication that the defendant was convicted of a crime for which he was not indicted. It seems clear, therefore, that the *Lott* case is inapplicable here. We do not, however, rest our decision on that determination alone. Ill. Rev. Stat. 1965, ch. 38, par. 22—44, provides as follows:

"In any complaint, information, or indictment, and in *any action or proceeding* brought for the enforcement of any provision of this Act, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this Act, and the burden of proof of any

such exception, excuse, proviso, or exemption, shall be *upon the defendant*." [Emphasis added]

The language of this statute is clear and unequivocal. It places a definite burden upon the defendant to prove the applicability of any exception contained in our Uniform Narcotic Drug Act. No burden is put upon the State, with respect to an exception, until such time as the defendant introduces evidence to show that an exception is applicable. Because the defendant has introduced no such evidence in the instant case, his first contention must fail. Accordingly, we hold that the evidence in this case was sufficient to prove that the substance in question was a narcotic drug within the statutory definition. See *People v. Washington* (1967), 81 Ill.App.2d 90, 225 N.E.2d 472, *aff'd.*, 41 Ill.2d 16, 241 N.E.2d 425 (1968); *People v. Marichez* (1966), 73 Ill.App.2d 230, 219 N.E.2d 625, *cert.* denied, 389 U.S. 860 (1967).

For his second contention, the defendant asserts that he was deprived of his right to a fair trial because the testimony of Inspector McKissack included references to other offenses committed by the defendant. Specifically, the defendant refers to McKissack's testimony about the LSD purchase and his testimony concerning a phone conversation in which he stated that he had made prior purchases from the defendant.

■ While it is true that parts of McKissack's testimony suggest the commission of extra-indictment offenses by the defendant, we do not not agree that the testimony was erroneously admitted by the trial court. We do not believe that the evidence of other offenses was introduced for the sole purpose of showing the defendant's propensity toward committing crimes like the one for which he stood indicted. Therefore, the recent case of *People v. Meid*, No. 69—167 (Ill.App.2d Dist., filed Sept. 3, 1970) (*rehearing granted*), upon which the defendant relies, is not on point here. We believe that under the circumstances of this case the facts concerning the LSD purchase and the telephone conversation were all a part of the continuing narrative which concerned the events attending the entire transaction for which the defendant was indicted. Merely because the full disclosure of the facts in this case showed that Hudson was guilty of other crimes did not limit the scope of the investigation. Here, such facts were all part of one continuous narrative. (*People v. Peto* (1967), 38 Ill.2d 45, 230 N.E.2d 236; *People v. Wells* (1965), 33 Ill.2d 394, 211 N.E.2d 699; *People v. Marose* (1957), 10 Ill.2d 340, 139 N.E.2d 735; *People v. Alexander* (1966), 69 Ill.App.2d 27, 216 N.E.2d 180; Wigmore, Evidence pars. 218, 306 (3d ed. 1940).) Accordingly, no error was committed by the trial court in admitting the testimony in question.

■■ Defendant next asserts that the trial judge failed to properly

instruct the jury on the essential elements of offense. He refers specifically to State's Instruction No. 9 which was given by the trial court over defense objection. That instruction reads as follows:

"The Court instructs the jury that 'Narcotic Drugs' includes Cannabis, which includes all parts of the plant Cannabis Sativ [a] L., commonly known as marihuana."

Defendant argues that this instruction is fatally defective because it did not include the statutory exceptions contained in the definition of Cannabis under Ill. Rev. Stat. 1965, ch. 38, par. 22—2—17(3). As we have stated earlier, the defendant introduced no evidence which showed that a statutory exception might be applicable in this case. Having failed to produce any evidence concerning exceptions, the defendant may not now assert that such exceptions were at issue in the trial. Thus, because the exceptions were not at issue, no instructions concerning the exceptions were required. The instruction here was fully supported by the evidence in the case and it was not reversible error for the trial judge to have given it. See *People v. Curtis* (1969), 116 Ill.App.2d 298, 254 N.E.2d 87; *People v. Brown* (1967), 89 Ill.App.2d 231, 231 N.E.2d 262. See also *United States v. Kahn* (7th Cir. 1967), 381 F.2d 824, *cert.* denied, 389 U.S. 1015 (1967).

■■ For his final contention, defendant argues that certain remarks made by the prosecutor during final argument were prejudicial and inflammatory beyond tolerable limits. The particular statements complained of are as follows:

\* \* \*

"A sale is not consummated at State and Madison, in full view of hundreds of people. This is not the type of merchandise that is offered quite legitimately. This is a dirty business, they are dealing in slow death \* \* \*. Do not permit them to die from marijuana drugs \* \* \*. It better be stopped right here in court. It better be stopped by you twelve ladies and gentlemen of the jury and not by a lot of nonsense \* \* \*. this danger against young people that get this marijuana, this marijuana that cripples their ability to reason, to act, to think \* \* \*. Cripples their ability to act as human beings. Who pays the ultimate penalty? You, you, and you, to support the habit."

\* \* \*

Defendant properly points out that there is a legitimate dispute being waged among scientists over the effects of marijuana upon the human system. But, though we are interested in such matters, we express no opinion as to the possible physiological or psychiatric effects which marijuana may have upon a human being. We are concerned with the propriety of the prosecutor's closing remarks. In this connection, we are

mindful that considerable latitude has traditionally been allowed in closing argument. And, though a careful scrutiny of the prosecutor's argument discloses that in a few instances he may have transcended the bounds of legitimate argument, a reversal is not warranted unless it appears that the prosecutor's remarks so influenced the jury that the defendant was substantially prejudiced. (See *People v. Hampton* (1962), 24 Ill.2d 588, 182 N.E.2d 698, *cert.* denied, 371 U.S. 851 (1962); *People v. Lopez* (1957), 10 Ill.2d 237, 139 N.E.2d 724, *cert.* denied, 353 U.S. 925 (1957).) Here the jury returned a just verdict. Indeed, it was the only reasonable conclusion to be reached on the basis of the evidence adduced at trial.

Accordingly, the judgment is affirmed.

Judgment affirmed.

McCORMICK, P. J., and BURKE, J., concur.