THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT ZAZZETTI, Defendant-Appellant.

(No. 56843;

First District—July 24, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

Indictment number 70-118 charged Robert Zazzetti, *inter alia,* with two counts of unlawful use of weapon. (Ill. Rev. Stat. Ch. 38, par. 24—1(a) (4).) The cause proceeded to trial before the Circuit Court sitting without a jury and resulted in findings of guilty on both counts. Judgment was entered on the findings and defendant was sentenced to a term of not less than four nor more than eight years in the Illinois State Penitentiary. On appeal he contends:

(1) that the trial court erred in refusing to suppress physical evidence;

(2) that he was not proven guilty beyond a reasonable doubt; and

(3) that the sentence imposed was excessive.

The evidence presented both at the hearing on defendant's motion to suppress and at the trial established that at approximately 10:45 P.M. on the evening of November 17, 1969, Officer Edward Martin O'Dea of the Cook County Sheriff's Department observed a vehicle being driven northbound on the Calumet Expressway by one Ralph Reynolds at an excessive rate of speed. The officer gave chase, but believing that he could not overtake the speeding vehicle due to the wet condition of the pavement, he placed a radio call for assistance. Officer O'Dea did manage to effect a stop of the offending vehicle on the expressway at Route 294, a well lighted area approximately three miles from the point where he had first observed it.

O'Dea and Reynolds both alighted from their vehicles and began to approach one another. At this time Officer Buckendahl, also of the Sheriff's Department, arrived on the scene and parked his vehicle behind that of O'Dea. He walked in the direction of Reynold's car and as he did so observed the defendant, who was in the passenger's side of that auto looking in the officers' direction. The passenger's door was open and defendant appeared to be exiting the vehicle. As Buckendahl approached, however, defendant closed the door, faced the front of the auto, and bent over from the waist. Buckendahl continued to walk toward Reynold's car, observing the defendant. When he reached the vehicle and looked in the driver's window, defendant exited. As he did so, Buckendahl observed what appeared to him to be a portion of the butt of a revolver protruding from beneath the front seat on the passenger's side, the seat which defendant was in the process of vacating. Buckendahl shouted to O'Dea to watch Reynolds, as there was a weapon in the car. (O'Dea testified at the hearing on the motion to suppress that this warning by Buckendahl contained the word "guns." At trial, however, he testified that he did not recall the exact wording of the warning.) Buckendahl at all times testified that the warning which he gave contained the word "gun."

Once Buckendahl was satisfied that Reynolds and defendant had been placed in a secure position, he returned to their auto, entering the passenger compartment from the driver's side. He found that the object which he had previously viewed was, in fact, the butt of a revolver, a .357 magnum caliber weapon containing a full complement of six cartridges, two of which were spent. His search of the car also resulted in the recovery of a fully loaded and cocked .32 caliber automatic pistol of French manufacture from beneath the driver's portion of the front seat.

Defense counsel's cross-examination of Officer Buckendahl at trial brought to light a discrepancy between the officer's testimony with respect to the location of the weapons and a police report prepared after the defendant and Reynolds had been transported to the station, the report indicating that the revolver and the pistol had both been recovered from beneath the driver's portion of the front seat. The report itself was neither offered nor admitted into evidence. Other evidence established that although Officer Buckendahl's name appeared thereon along with those of several other officers, he neither prepared nor signed the report.

Defendant initially contends that the trial court's refusal to suppress the weapons, upon which the charges of which he stands convicted were based, was erroneous since the court in so doing relied on the testimony of Officer Buckendahl who, it is argued, was discredited. Defendant argues that Buckendahl was not credible in view of the contradictory testimony given by Officer O'Dea at the hearing on the motion to suppress as to the number of guns initially viewed. (Defendant postulates that O'Dea's version of the warning given is more trustworthy and is indicative of the falsity of Buckendahl's testimony both as to the visibility and location of the weapons.) Defendant also views the discrepancy which exists between Buckendahl's testimony and the report as to the location of the guns as constituting a serious blow to the officer's credibility.

■■ It is uncontradicted that the report was neither prepared nor signed by Buckendahl. Under these circumstances he cannot be held accountable for its contents and the discrepancy between its contents and his testimony cannot be viewed as impeachment. We conclude that there does not appear of record a sufficient basis upon which we would be justified in disregarding the trial court's assessment of the officer's credibility.

■■■ The alternate argument is also made that even if Buckendahl's testimony is accepted as true, no constitutionally permissible basis for the search existed. Defendant reasons: if the revolver could be seen from outside the car it was not concealed; and if it was not concealed there was no probable cause for an arrest which might justify an attendant

search of the vehicle, the only offense having been committed and of which the officers were aware being that of speeding. This argument is based upon the premise that the fact that some portion of the revolver was in fact seen is totally inconsistent with its having been "concealed" within the meaning of par. 24—1 of the Criminal Code. This proposition has been previously considered and rejected. (See *People v. Euctice* (1939), 371 Ill. 159, 20 N.E.2d 83 and *People v. Latson* (1972), (Ill.App.3d), Appellate Court, First District, No. 56161, opinion filed May 17, 1972.) These cases hold that a weapon is concealed within the meaning of the statute even if there is some notice of its presence. All that is required is that it be concealed from ordinary observation. In the instant case there can be no question that this requirement was met with respect to the pistol. As to the revolver, we note that this weapon was almost completely concealed beneath the seat. Even after the officer's attention had been drawn to the area from which it had been recovered by defendant's movements and after he had viewed a portion of it, he could not be certain that that which he saw was a portion of a weapon. He did see enough, however, to establish probable cause for an arrest and entry into the vehicle for the purpose of securing evidence of the apparent offense.

■■  We reject defendant's contention that the search was not permissible as incident to the arrest since it was not necessary for the protection of the officer, defendant and Reynolds having been secured at the rear of the vehicle, and was beyond the physical bounds limitation set for such warrantless searches under the decision in *Chimel v. California* (1969), 395 U.S. 752. Under *Chimel* the reasonableness, and hence the constitutionality, of warrantless searches conducted pursuant to a valid arrest for the purpose of securing evidence of an offense continues to be recognized. The search of which defendant complains was conducted for such permissible purpose and was limited in scope to the auto from which the defendant had just alighted. We do not find the fact that the officers acted with caution and prudence in placing the subjects in a secure position prior to effecting the search operated to extend the search of the vehicle beyond the permissible bounds defined in *Chimel*. In any event, the search was justified without regard to the arrest in that it was the auto itself which provided the locus of the offense which the officer had probable cause to believe was being committed. In our view reason did not require that a warrant be procured merely because both Reynolds and defendant had already been detained.

■■  It is next contended that defendant was not proven guilty beyond a reasonable doubt. Arguments made in support of this contention relating to the credibility of Officer Buckendahl and the concealed nature of

the revolver having been fully considered in connection with the suppression issue need not be repeated here. With respect to the charge based upon the pistol, it is urged that the evidence failed to establish either defendant's knowledge of its presence or its accessibility to him. It is true, as defendant has pointed out, that the only direct evidence heard on the element of his knowledge consisted of the denial made by defendant himself when he took the stand on his own behalf. However, knowledge, scienter, may be proven by circumstantial evidence. In the present case the State's evidence, if believed, established that defendant and Reynolds were traveling together in an automobile and that beneath the seating area occupied by each was a loaded weapon. We find this evidence standing alone to constitute a sufficient basis upon which to infer that each had knowledge of the presence of both weapons.

Defendant's contention that the evidence was insufficient to establish guilt with respect to the revolver charge due to lack of proof of accessibility is also unconvincing. First, the statute under which he was charged provides

"Section 24—1:
   (a) A person commits the offense of unlawful use of weapons when he knowingly: * * *
      (4) Carries concealed in any vehicle * * * any pistol, revolver or other firearm; * * *."

Thus the statute which defines the offense does not establish accessibility as an element. The concern which had arisen in some of the reported cases as to the accessibility of the weapon finds its origin in par. 24—2 of the Criminal Code, which exempts from the operation of par. 24—1 certain persons and activities. However, par. 24—2(f) specifically places the burden upon the defendant to establish his status under one or more of the exemptions enumerated. This is in accord with well established principles of proof in criminal cases. (See *People v. Lott* (1962), 24 Ill.2d 188, 181 N.E.2d 112 and *People v. Hudson* (1970), 130 Ill.App.2d 1033, 266 N.E.2d 481, reversed on other grounds, 50 Ill.2d 1, 276 N.E.2d 345.) Moreover, we find the judgment of the trial court on the pistol charge to be supported by the evidence in view of par. 5—2 of the Criminal Code defining accountability. See *People v. Washington* (1962), 26 Ill.2d 207, 186 N.E.2d 259 and *People v. Williams* (1971), (Ill.App. 2d), 270 N.E.2d 144.

■■ Defendant finally contends that the sentence imposed is excessive. It is conceded that he is a member of that class of individuals with respect to whom the legislature has provided that the punishment for a violation of par. 24—1(4) of the Criminal Code shall be a penitentiary term of not less than one nor more than ten years. Thus defendant's

sentence falls well within the bounds prescribed by statute. We fail to find, as defendant has urged, that the circumstances of the offenses of which he stands convicted are such as would impel us to substitute our judgment for that of the learned trial court on the matter of a proper sentence in this case. The judgment of the Circuit Court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.