The People of the State of Illinois, Plaintiff-Appellee, *v.* David Barksdale *et al.*, Defendants-Appellants.

(Nos. 56277, 56278 cons.;

First District (5th Division)—September 7, 1973.

*Modified upon denial of rehearing October 16, 1973.*

Thomas F. Geraghty, of N. W. Legal Assistance Clinic, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSE CHARGED

Unlawful use of weapons by knowingly carrying a weapon concealed in a vehicle. Ill. Rev. Stat. 1969, ch. 38, par. 24—(1)(a)(4).

JUDGMENT

After a trial without a jury at which defendants were found guilty, each was sentenced to serve six months in the county jail.

CONTENTIONS RAISED ON APPEAL

(1) The trial court erred in denying defendants' motion to suppress certain physical evidence seized at the time of the arrest because the arrest was unlawful.

(2) Defendants were not proved guilty beyond a reasonable doubt.

EVIDENCE (It was stipulated that the evidence introduced on the motion to suppress would stand as evidence at the trial.)

*John Babusch,* for the State:

On August 14, 1969, at 1:30 A.M., while a police officer for the Chicago Police Department, he observed defendants driving a car southbound on Yale Avenue toward 63rd Street in Chicago. When at a point about one-third of a block from 63rd Street the stop light at 63rd was red, and the car turned west into a dark alley between Yale and Princeton. The witness and his partner followed in their car. Defendants' turn into the alley was in violation of an ordinance prohibiting the avoidance of traffic signals. When defendants' car stopped at the other end of the alley, the witness pulled in behind and turned on his spotlight. Then he and his partner, Officer Bell, left their car and, with guns drawn, approached the two-door car in which defendants and others were seated. He asked the driver, defendant Barksdale, for his driver's license and, when he did not have one, the witness placed him under arrest. He told Barksdale to step out of the vehicle, but a person on the passenger side got out first and, as he did so, a light come on inside the car and the officer observed a gun sticking out from underneath the front seat of the car. The gun was right by the driver's side, partially under the seat near the transmission housing hump in the floor. There was a light in the alley 50 feet from the car at the place where the elevated tracks cross the alley. The handle and trigger guard could be seen protruding from under the seat. He told Officer Bell the gun was

under the seat, and then went around to the passenger side to get Walker, the first man out of the car. A search revealed a gun on Walker's person. He returned to the driver's side, unwired the door which had been damaged and wired shut, and ordered Barksdale out of the car. By then, other officers were on the scene. Barksdale was searched but no gun was found on his person. The three other passengers in the back seat were ordered from the car and a search of the vehicle disclosed another pistol sticking between the back rest and the bottom of the rear seat to the right of defendant Randolph. Randolph, who had been seated in the rear seat of the car between two other passengers, was placed under arrest. In his arrest report, the witness wrote that he found a gun "lying on the rear seat," by which he meant that "the gun was stuck down between the rear seat."

*Allen Randolph*, on his own behalf:

On August 14, 1969, he was a passenger in a car stopped for a traffic violation near 6243 S. Princeton. David Barksdale was driving and he was seated in the rear between two other passengers. Barksdale had to relieve himself, so the car entered the alley and stopped. Then they noticed the police behind them. Officer Babusch came to the driver's side of the car with his gun drawn, and said, "We got Barksdale now," told everyone to get out of the car, face the wall, and then searched them. Everyone got out on the passenger's side. He didn't see the light go on in the car. None of the officers said anything about weapons before or after the search, and the defendants were told they were being taken in for a traffic violation. He did not see the gun on the seat next to him.

*David Barksdale*, on his own behalf:

On the night in question, he turned into the alley between 62nd and 63rd Streets, stopped the car, and was about to get out and relieve himself when he noticed a police car behind him. Before he turned into the alley he noticed the traffic light a half block away was not red but the caution light was on. Officer Babusch approached the driver's side and said, "You got a warrant on you. Get out." He was never shown a warrant. He was told to get out of the car and did so on the passenger's side because the door on the driver's side was wired shut. The subsequent search revealed nothing on his person, but a gun was found in the car. He did not know about the pistol under the front seat nor the one on the rear seat. He did not know anyone in the car had a pistol. The car was not his. It belonged to a police officer.

OPINION

In an extensive and well-reasoned brief, defendants' appointed counsel contend that the trial court erred when it denied their motion to suppress

all evidence seized at the time of the arrest because the arrest was unlawful, being made without probable cause.

The arresting officer testified that on the night in question, he observed the car in which these defendants and three others were riding. It was moving south on Yale toward 63rd Street. The light at the corner had just turned red. When the car was one-third of a block from the light, it turned into an alley and headed toward Princeton, the next street west. Before reaching Princeton, the car stopped in the alley. The officer testified that he followed the car because it appeared to him that the driver was attempting to avoid the red light at the corner, in violation of § 27-205 of the Municipal Code of Chicago.* When the car stopped, he turned on his spotlight, stopped his car, and he and his partner approached the vehicle on foot from each side, with guns drawn. When Barksdale, the driver, was unable to produce a driver's license, he was placed under arrest. He told Barksdale to get out, but since the door on the driver's side was wired shut, the person on the passenger side got out first and, when he did so, a light inside the car went on, revealing the gun sticking out from beneath the seat on the driver's side of the transmission hump.

The two defendants recite a somewhat different version of the arrest. They maintain that the two officers approached the car with their guns drawn, and said either "We got Barksdale now," or "You got a warrant on you. Get out." No warrant was ever produced. All five occupants of the car were told to get out, and both they and the car were then searched. It was at that time that the three guns were discovered.

■■ The facts before us do not, in our opinion, fall within that class of cases, cited by defendants, in which the search of defendants and the vehicle was unwarranted by the circumstances. (See 10 A.L.R.3d 314.) The Constitution does not prohibit all searches, only those which are unreasonable. Each case and its special circumstances must be studied to determine the question of reasonableness. *United States v. Rabinowitz,* 339 U.S. 56, 63, 70 S. Ct. 430.

■■ It has been held that a lawful arrest for a minor traffic violation does not, ipso facto, authorize a search of the driver and the vehicle (*People v. Mayo,* 19 Ill.2d 136, 166 N.E.2d 440), because usually in such cases there is no reason to suspect that there are fruits of such a crime, that the officer will be attacked, or that the prisoner will attempt

---

* No operator of a vehicle shall attempt to avoid obedience to any traffic-control device or traffic-control signal by driving upon or through any private property, any alley or any traffic island."

to escape. (*People v. Watkins,* 19 Ill.2d 11, 166 N.E.2d 433.) However, there are circumstances when an on-the-scene search of both the defendant and the vehicle is justified to protect the officer from someone he suspects to be more than a mere traffic violator. (*People v. Zeravich,* 30 Ill.2d 275, 195 N.E.2d 612; *People v. Thomas,* 31 Ill.2d 212, 201 N.E.2d 413; *People v. Jefferies,* 6 Ill.App.3d 648, 285 N.E.2d 582; and see 10 A.L.R.3d 314.) In the instant case, at 1:30 A.M., in what we note is a high-crime area, a car with five men turned down a dark alley and stopped before reaching the next street. The officer, who we believe had probable cause to suspect that a minor traffic violation had occurred, followed the car, and, when he questioned the occupants, found that the driver did not have a license. (Later, he discovered that none of the occupants owned the car.) We believe that under these circumstances the officers were justified in questioning defendants in the alley at that time and in that area with their guns drawn and, when finding that the driver had no license, were justified in making a search of defendants and the car incident to the lawful arrest. This situation is far different from a traffic stop during daylight hours on a heavily traveled city street where there would be less danger to police and escape would be much more difficult. It is our opinion that the trial court was correct in denying defendants' motion to suppress the guns as evidence.

Next, defendants argue that the trial court erred in finding defendants guilty of carrying concealed weapons in a vehicle because the weapons were not concealed.

Officer Babusch testified that he saw the handle and trigger guard of the gun protruding from beneath the driver's side of the front seat. This became possible, however, only after the passenger side door was opened, automatically turning on the car's interior light, and thus enabling the officer, looking through the open driver's side window, to see the gun on the floor next to where Barksdale was sitting. A further search of the car revealed another gun stuck in the middle of the back seat where Randolph was sitting.

Defendants place great reliance on *People v. Crachy,* 131 Ill.App.2d 402, 268 N.E.2d 467, where we held that a pistol tucked in the waistband of defendant's trousers and identified as a gun by the arresting officer from a distance of 15 to 30 feet, did not constitute a "concealed" weapon. We consider *Crachy* distinguishable, and two more recent cases deal specifically with the question presented here, *i.e.,* when is a weapon concealed within a motor vehicle?

In *People v. Latson,* 5 Ill.App.3d 1100, 284 N.E.2d 436, defendants contended that because the trigger and stock of a shotgun placed under

the front seat were visible from outside the car when defendant opened the door and stepped out, the gun was not concealed within the meaning of the statute. In affirming the conviction, the court held that the standard of *People v. Euctice,* 371 Ill. 159, 20 N.E.2d 83, should apply, and found that the weapon was "concealed from ordinary observation" and therefore came within the statute.

In *People v. Zazzetti,* 6 Ill.App.3d 858, 862, 286 N.E.2d 745, the court cited both *Euctice* and *Latson* with approval and affirmed the conviction of a defendant who had two pistols partially concealed under the front seat—one seen as defendant got out of the car after a speeding incident, the other pursuant to a search. The court stated, "[t]hese cases hold that a weapon is concealed within the meaning of the statute even if there is some notice of its presence. All that is required is that it be concealed from ordinary observation." See *People v. Cosby,* 118 Ill.App. 2d 169, 255 N.E.2d 54.

■■ Here, the gun under the front seat was not seen until the light came on inside the car. It was in almost the same position under the front seat as the weapons in *Latson* and *Zazzetti* and was certainly concealed from ordinary view even though an alert officer could see a part of it under the circumstances described. The other gun found in the back seat stuffed between the back rest and the seat was likewise "concealed from ordinary observation" while three people occupied the rear seat. We agree with the trial judge that both guns in question were concealed within the meaning of the statute and, contrary to defendants' assertions, were easily accessible to the two defendants, respectively.

■ Next, defendants argue that the State failed to prove beyond a reasonable doubt that they knowingly carried the weapons which we have determined were concealed in the vehicle.

As to each of the instant defendants, the findings of guilty were supported not only because there was a concealed gun within easy reach of where he was sitting in the vehicle, but the court could also have drawn a reasonable inference of knowledge of the presence of a concealed weapon "from all of the uncontroverted circumstantial evidence presented at the trial." *People v. Williams,* 132 Ill.App.2d 806, 808, 270 N.E.2d 144; and *People v. Zazzetti,* 6 Ill.App.3d 858, 863, 286 N.E.2d 745.

Finally, defendants assert that defendants were not proved guilty beyond a reasonable doubt because Officer Babusch's testimony was inherently incredible. It is, of course, the function of the trial judge, not this court, to determine the credibility of the witnesses. In our view, a

review of the record clearly supports the trial court's finding of defendants' guilt beyond a reasonable doubt. The judgments are affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.