THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERIC R. EHN *et al.,* Defendants-Appellants.

(No. 58772;

First District (2nd Division)—October 29, 1974.

Elliott T. Price, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

The defendants, Eric R. Ehn, Louis Truelock and Fred Jenkins, were charged with unlawful use of weapons, in violation of section 24—1 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 24—1), in that they knowingly possessed a shotgun with a barrel less than 18 inches in length; that they knowingly carried concealed, in an automobile, a revolver, and that they knowingly carried a revolver within 5 years of their release from a felony conviction. After a bench trial, all three defendants were found guilty on the shotgun counts and the counts charging possession of a revolver within 5 years of release from a felony conviction, and each was sentenced to a term of 3 to 10 years in the penitentiary. All three defendants have appealed.

On appeal defendants contend that they were not proven guilty beyond a reasonable doubt of knowledge of the presence of the two revolvers in the automobile; that defendants Truelock and Jenkins were not proven guilty beyond a reasonable doubt of knowledge of the

presence of the shotguns in the trunk of the automobile and, further, that they did not have constructive possession of the shotguns; that the State failed to prove that the length of the barrels of the shotguns was less than eighteen inches; that the variance between the bill of particulars and the evidence resulted in prejudicial error; that the trial court erred in permitting certain exhibits to be introduced in evidence; and that the search of the automobile was illegal.

At the trial David William Schwieger, a police officer for the city of Chicago, testified that on May 27, 1970, he was working with his partner, Russell Lynn, in a marked police vehicle in the vicinity of 744 West North Avenue, Chicago, when he noticed a 1968 Dodge Charger being operated with a towbar across the back of the car so as to obscure the license plate. They stopped the automobile and talked to Eric Ehn, the driver, at the rear of his car. While he was talking, Schwieger noticed that the left arm of the person sitting in the right front seat moved to the rear of the vehicle, between the two bucket seats. Schwieger then looked through the rear window and saw the person's left arm come back a second time with a revolver in his hand. Schwieger identified Louis Truelock as the person who passed the gun to the rear.

Schwieger stated he yelled to Lynn that the occupants were passing a gun and ordered the three occupants out of the vehicle. Schwieger said that, as he guarded the four people, he noticed that Lynn found shotgun shells on the person of Eric Ehn. Schwieger then searched the rear of the vehicle and found two revolvers wedged between the rear seat and the door panel on the right side, covered with a sweater. He also found two knives and a bandaid case with an ignition-jumper kit in the glove compartment on the console, and a construction helmet containing a mask and a pair of rubber gloves on the floor in the right front section of the car where Truelock was sitting. Schwieger testified that these items were inventoried, together with two shotguns Lynn had found in the trunk.

Schwieger identified People's Exhibits Nos. 1 through 15. He said People's Exhibit No. 1 was a picture of the vehicle the defendants were riding in when they were stopped; People's Exhibit No. 2 was a picture of the defendants at the time they were arrested, wearing the clothes they had on when they were stopped; People's Exhibit No. 3 was a picture of the defendants, depicting the clothes they wore underneath their outer clothes; People's Exhibit No. 4 was a picture of defendants wearing the masks which were found in the automobile; People's Exhibits Nos. 5 and 6 were the two revolvers which were recovered from the automobile; People's Exhibits Nos. 7(a) and 7(b) were the two shotguns that were in the trunk; People's Exhibits Nos. 8(a), 8(b) and 8(c)

were a helmet, a mask and a pair of rubber gloves found inside the automobile; People's Exhibits Nos. 9(a), 9(b) and 9(c) were three masks, specifically, stockings that were tied in a knot on the top with the bottom portion open; People's Exhibits Nos. 10 and 11 were two knives found in the console of the automobile; People's Exhibits Nos. 12(a) and 12(b) were a bandaid container found in the glove compartment of the automobile, with a wire for jumping ignitions; People's Exhibit No. 13 was a picture of all the items taken; People's Exhibit No. 14 was a number of .38-caliber bullets used in a handgun; and People's Exhibit No. 15 was ammunition found on Ehn for a .12-gauge shotgun.

Russell Lynn, a Chicago police officer, substantiated the testimony of Schwieger. Lynn also testified he searched the defendants after they left the automobile. On Eric Ehn he found shotgun shells, a nylon stocking and two sets of clothing. On Louis Truelock he found shotgun shells, ammunition for a .38-caliber gun and two sets of clothing. On Fred Jenkins he found .38-caliber ammunition and a nylon stocking which had been cut up. Lynn stated he then handcuffed the defendants, and Schwieger then searched their automobile; and that Schwieger recovered two revolvers, a plastic type of construction helmet, a piece of paper with holes cut in it, a bandaid can with some wires and clips on the end, and two knives. Lynn stated he opened the trunk and found two fully loaded sawed-off shotguns.

The trial court admitted into evidence People's Exhibits 1, 2, 3, 5, 6, 7(a), 7(b), 8(a), 8(b), 8(c), 9(a), 9(b), 9(c), 14, 15 and 16, but refused to admit People's Exhibits 4, 10, 11, 12 and 13.

Eric R. Ehn, one of the defendants, testified that on May 27, 1970, he drove his car to work. When he got through working, at about 8:30 P.M., he changed into his bike clothes—levis and a motorcycle jacket— and threw his work clothes into his trunk; and that he had possibly five sets of clothes from that week in his trunk, together with a large thick quilt and tools. Ehn further testified that, when he left work, he visited Truelock, another defendant, at Truelock's job site and helped Truelock fix his car. He put on another pair of pants over his levis because he did not wish to get them dirty. He said his car was parked directly behind Truelock's car, with the trunk left open, and that he could not see the trunk from where he was working.

Ehn also stated he and Truelock needed some parts for the car and so went to a girlfriend's house to get some money to buy the parts. Enroute they picked up Fred Jenkins and George Bidot, who were waiting at a bus stop at North Avenue and Wells Street, and he then proceeded west on North Avenue. He said Jenkins was seated behind him and Bidot (who was indicted along with the defendants, but was

not tried with them) was seated on the right side of the rear seat. Ehn testified he was stopped by the police. He still had on his work clothes. He stated there was a bulge in the left front pocket of the jacket he was wearing, which was caused by an aluminum cigarette case he had in that pocket. Ehn further testified that while he was talking to Lynn, Schwieger stood in front of the squad car; and that Schwieger did not shout anything at any time. He said that after Lynn ordered the passengers out of the car, Lynn asked him for the key to the trunk and that he gave the key to Lynn. Ehn said Lynn could not open the trunk, so Ehn stuck the key in the lock and opened the trunk.

On cross-examination, Ehn stated Lynn did not find shotgun shells or a stocking with a knot tied in it on his person. He said he did not see any ammunition taken from Jenkins or Truelock. Although Schwieger searched the inside of the car, Ehn did not see him recover two revolvers. Nor did he see Schwieger recover any stockings, masks or knives from the car. Ehn identified People's Exhibits Nos. 2 and 3 as the extra set of clothes he wore that evening and the extra set of clothes Truelock wore that evening. He said that, before the trunk was opened, he never saw the two shotguns which were found in the trunk, and that he did recall Lynn finding the ammunition in the trunk.

Fred Jenkins testified that at about 10 P.M. on May 27, 1970, he was standing on the corner of North Avenue and Wells Street when he saw Truelock and Ehn in a car. He accepted a ride with them. He said that at 744 West North Avenue police officers stopped the car and searched all of the passengers. Jenkins denied he had any weapons or shells of any kind on him or that he had more than one set of clothes on at the time. He said that prior to the search by the police he did not know there were any revolvers or shotguns or ammunition in the car. The first time he knew of or saw the guns and shells was when the police searched the car.

Jenkins further stated that, when the police stopped the car, Ehn, the driver, got out of the car and walked back to the police officers. Schwieger then came up to the side of the car and put his head in the window on the driver's side and then Schwieger ordered everyone out of the car. Jenkins said Schwieger took his billfold, a handkerchief, and a pack of cigarettes. Jenkins denied having a black stocking, stating that the first time he saw the stocking was when he was forced to put it on by the police officers. Jenkins also stated the police officers did not take any ammunition or shells from him nor did he observe them take any from the other defendants. Jenkins said that when other police officers arrived to help, they stood between him and his friends, thereby hindering his view of the search conducted on the other defendants.

Jenkins also testified that when Schwieger searched the car, Jenkins did not see a revolver, but he heard Schwieger tell Lynn he had found one. When Lynn searched the trunk, Jenkins observed him as he discovered a blanket and two shotguns. He also observed Lynn when he discovered some shells which Jenkins thought were in a box in the trunk.

The testimony of Truelock substantially confirmed the testimony of Ehn and Jenkins. Truelock also stated that he did not have any revolvers, shotguns or ammunition in his possession.

At the close of all the evidence, the trial court stated that the testimony of the defendants was unreasonable.

The defendants first argue that it was error for the trial court to admit into evidence the pictures showing the defendants wearing two sets of clothing, as well as the three masks made out of nylon stockings, the helmet and gloves, and a mask made from a shower cap. The defendants also contend that it was error for the police officers to testify that the defendants were wearing two sets of clothes and that the defendants had masks in their possession at the time of their arrest.

■■ The general rule is that evidence of other crimes committed by a defendant is inadmissible when independent of or disconnected from the crime with which he is charged. (*People v. Cage*, 34 Ill.2d 530, 216 N.E.2d 805.) But a corollary of the rule is that evidence, relevant to the main issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge, is admissible. (*People v. Botulinski*, 392 Ill. 212, 64 N.E.2d 486.) Resolution of the conflict between the rule and corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. *People v. Tranowski*, 20 Ill.2d 11, 169 N.E.2d 347.

■■ In the case at bar, the evidence that the defendants were wearing two sets of clothes at the time of their arrest and that they had masks and a helmet and gloves in the automobile at the time of the search was not for the purpose of showing that other crimes had been committed but, rather, was a description of the various items found in the automobile after a lawful arrest and search which, as more fully explained hereinafter, tended to prove that defendants had a common design to commit the crime of unlawful use of weapons. The trial court did not err in admitting into evidence the various items of personal property and criminal paraphernalia found in the automobile as a result of a legal search. Also, the trial court did not err in permitting the police officers to testify thereto, as well as to describe the wearing apparel of the defendants. *People v. Cannon*, 18 Ill.App.3d 781, 310 N.E.2d 673.

The defendants next argue "that from a consideration of the totality of the evidence, there remains a pervasive and abiding doubt that any of the defendants had the requisite knowledge that the pistols were present in the car." Contrary to the defendants' contention, the evidence, if believed by the trier of fact, discloses that each defendant had knowledge of the presence of the revolvers. Police Officer Schwieger testified that he and his partner, Police Officer Lynn, observed, a 1968 Dodge Charger being operated with a towbar across the rear of the automobile so as to obscure the license plate. They stopped the automobile and talked to Eric Ehn, the driver and owner of the automobile, at the rear of his car. Schwieger, looking through the rear window of the car, then observed Truelock pass a revolver to someone sitting in the back seat.

Schwieger called to Lynn that the occupants were passing a gun and ordered the three occupants out of the vehicle. He searched the rear of the vehicle and found two revolvers wedged between the rear seat and the door panel on the right side, covered with a sweater. He also found two knives and a bandaid case with an ignition-jumper kit in the glove compartment on the console and a construction helmet containing a mask and a pair of rubber gloves on the floor of the right front section of the car, where Truelock had been sitting. It should be noted that Ehn and Truelock had shotgun ammunition on their persons and Jenkins had .38-caliber ammunition on his person.

■■■ The essential element of knowledge can seldom be proven by direct evidence, but, rather, must often be proven by circumstantial evidence. (*People v. Bell*, 7 Ill.App.3d 625, 288 N.E.2d 253.) In the instant case, Officer Schwieger saw Truelock pass a gun. If the officer's testimony is to be believed, Truelock obviously had knowledge of the revolvers. Moreover, since Jenkins was in the back seat of the car at the time the gun was passed (which was before the police search of the car), had then made no remonstrance, and had then had .38-caliber ammunition on, his person, the court could have reasonably concluded that he also had knowledge of the guns. Although Ehn was not in the car at the moment the gun was passed, he was the owner and driver of the car. His ownership and control of the car together with the numerous items of criminal paraphernalia found in the car permit a reasonable inference that he too had knowledge of the weapons. The totality of the evidence was sufficient for the trial court to find all of the defendants guilty of knowingly carrying a revolver concealed in an automobile in violation of section 24—1 of the Criminal Code. *People v. McKnight*, 39 Ill.2d 577, 237 N.E.2d 488, *cert. denied*, 394 U.S. 993; *People v. Zazzetti*, 6 Ill.App.3d 858, 286 N.E.2d 745; *People v. Barksdale*, 14 Ill.App.3d 415, 302 N.E.2d 718.

Defendants Truelock and Jenkins argue that the shotguns, which were located in the trunk of the automobile owned by Ehn, were situated in an area over which they had no immediate and exclusive control and that they were not proved to have had knowledge of the presence of the shotguns. However, under section 5—2 of the Criminal Code a person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. Ill. Rev. Stat. 1969, ch. 38, par. 5—2.

■■ Defendants Truelock and Jenkins do not argue that Ehn did not have knowledge and constructive possession of the shotguns in the trunk of the car. They contend that they cannot be held responsible because they did not have knowledge of the shotguns being in the trunk. However, if section 5—2 is applicable to Truelock and Jenkins, the knowledge and possession of the shotguns by Ehn is imputed to Truelock and Jenkins. We think it is applicable. All the defendants were riding together in an automobile owned and operated by Ehn and that automobile contained two revolvers and numerous articles of criminal paraphernalia. All the evidence clearly indicated that the defendants were traveling together with each defendant's approval and assent for the commission of the crime of unlawful use of weapons. *People v. Williams,* 132 Ill.App.2d 806, 270 N.E.2d 144.

In *People v. Nowak,* 45 Ill.2d 158, 169, 258 N.E.2d 313, the court said:
"Where two or more defendants have a common design to do an unlawful act any act done by any of them in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed. (*People v. Armstrong,* 41 Ill.2d 390, 398; *People v. Hill,* 39 Ill.2d 125, 133.) It is also well settled that proof of a common design or purpose can be drawn from the circumstances surrounding the commission of the act."

■■ In the case at bar, the circumstances surrounding the commission of the crime of unlawful use of weapons show a common design. Truelock was seen passing a revolver. Ehn and Truelock had shotgun ammunition on their persons. Jenkins had .38-caliber ammunition on his person. Ehn and Truelock had two sets of clothing and masks. Two revolvers, two knives, a helmet, a piece of paper with holes cut in it, and a bandaid kit with some wires and clips on the end were found in the automobile. These facts support a reasonable inference that all of the defendants had a common design to commit the crime of unlawful use of weapons. (*Williams, supra.*) Proof of a common design need not be supported by words of agreement but can be drawn from the circumstances surrounding

the commission of the act. (*People v. Jones,* 12 Ill.App.3d 643, 647-48, 299 N.E.2d 77.) Therefore, Truelock and Jenkins, together with Ehn, were rightfully found guilty of possession of the two shotguns found in the trunk of the automobile.

The defendants also argue that the State failed to prove they knowingly possessed a shotgun with a barrel less than 18 inches in length, as provided in section 24—1(a)(7) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a)(7)). The two shotguns were introduced into evidence and, therefore, were before the eyes of the trial judge. Further, at the time the shotguns were being identified, the assistant State's Attorney stated, without objection by defense counsel, that both of the shotguns were less than 18 inches in length. Also, the assistant State's Attorney offered the trial court an 18-inch ruler, to measure the length of the shotguns, and, when defense counsel objected, the court stated the guns were in evidence.

██ In the case at bar, the fact that the shotguns were introduced in evidence and viewed by the trial court and the failure of defense counsel to object to the statement of the assistant State's Attorney that the shotguns were less than 18 inches in length were sufficient to support a guilty finding beyond a reasonable doubt that defendants knowingly possessed a shotgun with a barrel less than eighteen inches in length in violation of section 24—1(a)(7) of the Criminal Code. *People v. McCall,* 14 Ill.App.3d 340, 302 N.E.2d 400.

The defendants also argue that there was a fatal variance between the evidence and the bill of particulars. During the trial, the State introduced evidence to the effect that the defendants were riding in a car about 10:30 P.M. on May 27, 1970, when they were stopped by two police officers at 744 West North Avenue, Chicago, Illinois. In an answer to a defense motion, the State filed a bill of particulars in which it was stated that the police stopped the automobile at 744 West Monroe Street, Chicago, Illinois. The statement is contrary to the testimony of Police Officer Schwieger, Police Officer Lynn, and defendant Jenkins, all of whom testified that the automobile in which the defendants were riding was stopped at 744 West North Avenue. Further, Ehn stated that he was "going down North Avenue" when he was stopped by a squad car and Truelock's testimony was to the effect that they were stopped on North Avenue.

██ It is therefore apparent that the address of 744 West Monroe Street in the bill of particulars was a typographical or clerical error. The courts have held that a typographical or clerical error is a formal rather than a substantive defect, which does not violate defendants' constitutional right to be apprised of the nature of the charge against them.

*People v. Parr,* 130 Ill.App.2d 212, 220, 264 N.E.2d 850; *People v. Bates,* 9 Ill.App.3d 882, 293 N.E.2d 358.

██ Further, a variance, in criminal law, is not regarded as material, unless it is of such a substantial character as to mislead those accused in preparing their defense or unless it may place them in second jeopardy for the same offense. (*People v. Boneau,* 327 Ill. 194, 158 N.E. 431; *People v. Mikota,* 1 Ill.App.3d 114, 273 N.E.2d 618; Ill. Crim. Proc. (1971), v. 5, sec. 36.13, p. 14.) The trial court, in denying defendants' motion for a directed verdict because of the variance, stated that the defendants knew the location of the occurrence and so they were not surprised.

██ In light of the foregoing, there was no fatal variance between the address given in the bill of particulars and the evidence introduced at the trial. Therefore, the trial court did not err in denying the defendants' motion to dismiss because of a typographical error in the bill of particulars stating that the arrest occurred at 744 West Monroe Street when, in fact, the trial testimony of all the witnesses clearly shows that the automobile was stopped at 744 West North Avenue, Chicago. This is especially true in light of the fact that the defendants do not contend that they were surprised at trial and, further, there is no evidence that they suffered any prejudice. (*People v. Simental,* 11 Ill.App.3d 537, 543, 297 N.E.2d 356.) Further, since the address is not an essential ingredient of the crime of unlawful use of weapons, the variance between the bill of particulars and the proof was harmless. *People v. Jones,* 12 Ill.App.3d 643, 652-653, 299 N.E.2d 77.

Finally, the defendants, relying upon the case of *Chimel v. California,* 395 U.S. 752, contend that, even though the arrest was legal, the police officers were not justified in conducting a thorough search of the interior of the automobile, including the glove compartment and the trunk. The evidence discloses that the police officers stopped the automobile owned and driven by Ehn because it was being operated with a towbar across the rear of the automobile so as to obscure the license plate. While Police Officer Lynn was talking to Ehn, Police Officer Schwieger observed Truelock pass a revolver to someone sitting in the back seat. Thereupon, all defendants were ordered out of the car and searched. Ammunition for either a revolver or a shotgun was found on all three defendants. Schwieger then searched the interior of the automobile and found two revolvers. Finally, Lynn searched the trunk and found two fully loaded shotguns.

Relying on *Chimel, supra,* the defendants argue that since all defendants were out of the car, the search of the interior of the automobile and the search of the trunk could not be upheld as incident to a lawful arrest. Defendants have, however, overlooked a wholly different alterna-

tive theory—whether there was probable cause to make the complete search. After considering this latter theory, we find it unnecessary to discuss the possible application of *Chimel* to the instant case.

In one of the earliest search and seizure cases, the Supreme Court stated that the right to search an automobile and the validity of the seizure are not dependent on the right to arrest. Rather, the search can be grounded on the reasonable cause the seizing officer has for his belief that the contents of the automobile offend against the law. (*Carroll v. United States,* 267 U.S. 132.) In such cases, a warrant is unnecessary to search a car stopped on the highway, as the car is movable, the occupants alerted, and the car's contents may never again be found if a warrant must be obtained. (*Chambers v. Maroney,* 399 U.S. 42.) Moreover, the Court in *Chambers* pointed out that once probable cause exists to search a car on the highway, that probable cause continues even when the car is taken by the police and removed to the police station.

■■ In the instant case, it is conceded that the police had validly stopped the defendants for a traffic violation. At that point, Officer Schwieger saw a gun in the car. Since it is unlawful to carry any weapon concealed in a vehicle, Officer Schwieger had at that moment probable cause to believe a crime was being committed and that the contents of the car offended against the law. That being so, the officers were fully justified in searching the entire car. (*People v. Babic,* 7 Ill.App.3d 36, 287 N.E.2d 24.) The fact that the defendants were out of the car, or even under arrest in the squad car, would be of no importance. (*People v. Canaday,* 49 Ill.2d 416, 275 N.E.2d 356; *People v. Ricketson,* 129 Ill.App.2d 365, 264 N.E.2d 220.) Probable cause to search the car continued to exist. *Chambers, supra.*

■■ It would be difficult to imagine a stronger set of facts for a finding of probable cause than in the instant case. Officer Schwieger actually saw a gun being passed in the car. A subsequent search of the defendants revealed ammunition on all three defendants for either a revolver or a shotgun. Accordingly, we hold that there was no error in denying the defendant's motion to suppress and allowing the weapons into evidence.

The judgments of conviction are affirmed.

Judgments affirmed.

HAYES, P. J., and LEIGHTON, J., concur.