**People of the State of Illinois, Plaintiff-Appellee, v. Raymond Freeman, Defendant-Appellant.**

**Gen. No. 52,852.**

First District, Second Division.

July 1, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Nunzio Tisci, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

The defendant, Raymond Freeman, was indicted for aggravated battery and attempt robbery, violations of Ill Rev Stats (1965), c 38, § 12–4(a) and § 8–4, respectively. In a trial by the court without a jury, he was

found guilty of aggravated battery and judgment was entered. Following a hearing in aggravation and mitigation, the defendant was sentenced to not less than four nor more than four years and one day in the State Penitentiary. He appeals.

Readell Mitchell stated that on March 31, 1967, at approximately 1:05 a. m., he was walking home after finishing work as a Chicago Transit Authority bus driver; that he met the defendant at 71st and Parnell in Chicago; that Mitchell, dressed in his C.T.A. uniform, saw the defendant put his hand in his pocket and heard a click; and that the accused then confronted him with a gun and said: "Give me what you've got." At the time, Mitchell had a changer, a punch, and approximately $135. Mitchell hit the drawn gun with his left hand and struck the defendant with his right. The weapon discharged and the accused, still holding the gun, attempted to flee but was pursued by Mitchell, who was unarmed.

A struggle ensued in an adjacent alley and two or three more shots were fired there before the defendant dropped the weapon. Mitchell went on to say that he was struck in the right thigh by one of the bullets; that he did not know if this occurred on the street or later in the alley; that among the first two police officers to arrive in the alley was Patrolman Burns; and at that time, Mitchell was on top of the struggling defendant, had disarmed and was striking him. The accused did not lose consciousness. The victim was thereafter taken to a hospital and was released the next day. In conclusion, Mitchell stated that he did not know the defendant prior to this altercation, had never seen him before, and did not attempt to rob the accused on March 31, 1967.

Thomas Gray, a lieutenant in the Chicago Fire Department, stated that he was working in a fire station located at 71st and Parnell in Chicago when he heard a shot fired at approximately 1:00 a. m. on March 31,

1967. Upon investigation, he observed Mitchell and the defendant and saw that Mitchell had subdued the accused and was holding him down, although the defendant continued to struggle. A gun was lying in the alley. Apparently, the defendant was conscious. The police then arrived, told the defendant he was under arrest, and he should stop struggling. It appeared to this witness that the accused was not bleeding but that Mitchell was. Mitchell was limping and it looked as if the accused had fractured his leg.

Officer Burns, the arresting officer, stated that he went to the scene of the crime in response to a call over his police radio. Upon arriving in the alley, he saw Mitchell holding his right thigh with his right hand and the defendant with his left hand. Mitchell was hopping around on one leg and was holding the accused by the coat collar. The defendant was on his knees at the time and was trying to rise. The gun was lying in the alley. Upon seeing Officer Burns, Mitchell said, in the presence of the defendant: "I have been shot; he (defendant) tried to rob me."

The sole witness for the defense was the defendant. He stated that on March 31, 1967, he attended a party at his friend's house located at 71st and Wentworth and left between 12:10 and 12:20 a. m.; that before leaving he had allegedly loaned five dollars to his friend, and received a Baratta automatic revolver as security, and it was this weapon which the State's witnesses had identified as being used in the alleged crime. On March 31, 1967, after leaving the party, he was walking to his grandmother's home and passed Readell Mitchell, who was walking in the opposite direction. Mitchell allegedly called the defendant back and asked him if they had ever met on the West Side of Chicago. The defendant said no, but Mitchell allegedly stated that he looked like a man who had taken $10 from him. Mitchell then allegedly struck the defendant in the eye and began beating

10

him. In time, the defendant tried to pull out the gun hoping to scare Mitchell with it, but the accused was struck again. The gun then discharged, shooting the defendant in the toe. The weapon discharged again as Mitchell knocked it out of the defendant's hand. The accused then tried to run down the alley but was subdued by Mitchell. In conclusion, the defendant denied committing the crimes with which he was charged and stated that he was almost seventeen when the crimes occurred.

On cross-examination, the accused testified that he did not check to see if the gun was loaded when his friend pledged it with him. He just stuck it in his belt with the gun's handle exposed and later tried to scare Mitchell with it. The accused allegedly did not know it was loaded.

At the later hearing in aggravation and mitigation, a presentence investigation report was considered by the court before imposing sentence. The report stated, inter alia, that "the defendant was born in May, 1940 [sic], was seventeen years of age in 1967, and lived with his mother who had four other children." His mother was sworn as a witness at this hearing and testified that the accused was seventeen years of age; that she was the mother of eleven children; and that she worked as a nurse's aid to support them.

In aggravation, the State introduced prior convictions of battery and contributing to the sexual delinquency of a minor, both misdemeanors, and recommended a sentence of five to fourteen years. In mitigation, defense counsel stated that the defendant was only sixteen when the instant crime was committed; that the victim was accidentally, not intentionally, wounded; and that a sentence of two to five years was recommended. The court imposed a sentence of four years to four years and one day.

On appeal, the defendant contends that he was denied a fair trial because: (1) the trial court improperly admitted hearsay evidence over the objections of defense

counsel; (2) the court's remarks indicated that it had already adjudged the defendant to be guilty before all the evidence was presented; (3) the court improperly admitted hearsay evidence at the hearing in aggravation and mitigation and was prejudiced toward the defendant at that hearing. The defendant also urges that the minimum sentence given him was excessive and should be reduced.

The defendant's initial contention urges that prejudicial error occurred when the court allowed Officer Burns to testify as to what the victim, Readell Mitchell, told him in the alley when Burns appeared. Since the prosecution offered the victim's declaration ("I have been shot; the defendant tried to rob me") to prove the truth of the matters asserted therein and since the declarant, the victim Readell Mitchell, did not testify as to what he told Officer Burns, this court is faced with a hearsay situation. However, we agree with the State that the trial court did not err in allowing Officer Burns to testify as to what Mitchell told him because the victim's declaration, under the facts of this case, qualify as an exception to the hearsay rule, namely, as a spontaneous declaration or an excited utterance. As such, his declarations are competent and are admissible into evidence through the testimony of the person to whom he spoke.

In People v. Poland, 22 Ill2d 175, 181, 174 NE2d 804, 807 (1961), the court stated that three factors are necessary to bring a declarant's statement within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement by the declarant; (2) the absence of time available to the declarant in which to fabricate his declaration; (3) a declaration relating to the circumstances of the exciting occurrence.

In the case at bar, all three factors are amply sustained by the evidence. The declarant, Readell Mitchell, was the victim of an attempted robbery and was shot in

12

the thigh as the culprit was seeking to escape. Mitchell, while hopping on one leg and immediately upon seeing a police officer, told him that he (the declarant-victim) had been shot and that the defendant tried to rob him. There was hardly time for the declarant to fabricate this declaration. The excitement of the affray continued to suspend the declarant's powers of reflection and fabrication. Moreover, the victim's declaration did relate to the circumstances of the exciting occurrence which was the attempted armed robbery and ensuing aggravated battery.

■ It is to be noted that the victim-declarant, Readell Mitchell, did testify in this case but no inquiry was made of him as to what he told Officer Burns at the scene of the crime. However, this omission is not fatal to the admission of his declaration through the testimony, at trial, of another witness. Dean Wigmore in discussing the spontaneous declaration exception to the hearsay rule has stated that the death, absence or other unavailability of the declarant need never be shown as a foundation before the declarant's spontaneous exclamation is allowed into evidence. The reason for this is that the declarant's out-of-court assertion, due to its spontaneity, caused by the exciting occurrence, is more truthful than is likely to be obtained from the declarant later on the witness stand. A necessity or expediency thereby arises for resorting to the declarant's excited utterance. See 6 Wigmore on Evidence, § 1748 (3d ed 1940) ; McCormick on Evidence, § 272 (1954 ed). Since, under the spontaneous declaration exception to the hearsay rule, the availability of the declarant as a witness does not preclude a third person from testifying to what the declarant told him, the declaration should not be excluded when the declarant testifies as a witness but is not asked any questions concerning his excited utterance.

■■ In People v. Damen, 28 Ill2d 464, 193 NE2d 25 (1963), the reviewing court held that no error occurred when a police officer testified to what the victim of a rape told him. The testimony was held to be competent and admissible under the spontaneous declaration exception to the hearsay rule although the victim had testified at the trial and apparently no inquiry was made of her as to what she had told the police officer at the scene of the crime. We therefore hold that no error occurred when Officer Burns testified as to what the victim spontaneously told him at the scene of the offense. Furthermore, this testimony was admissible although the victim-declarant had testified earlier in the trial and no inquiry was made of him as to his out-of-court statement to the police officer.

■ The defendant also contends that the trial court, by its remarks, indicated that it had prejudged the defendant to be guilty. We have reviewed the record in this regard and are of the opinion that no error occurred. On one occasion, the trial court indicated his surprise that the defendant only thought he knew his friend's name. On another occasion, the court was surprised when the defendant testified that the arresting officer allegedly struck him in the face. The defendant was hardly prejudiced by these spontaneous remarks of the trial court.

■ Thirdly, the defendant urges that the court improperly admitted hearsay testimony at the hearing in aggravation and mitigation and was also prejudiced toward the defendant at this stage of the proceedings. The alleged prejudicial hearsay is said to be the presentence investigation report since the court relied upon it, to some extent, in sentencing the defendant, and it was apparently erroneous in stating the age of the defendant and the number of children his mother had borne. The defendant was not prejudiced by the apparent typographical error as to his age since his mother testified at this hearing and stated that her son was seventeen

14

and not twenty-seven. The trial court specifically mentioned, before passing sentence, that he too thought the defendant was seventeen. Any error as to the number of children which defendant's mother might have borne was not relevant, within the facts of this case, to the issue of sentencing. We find no merit in this contention.

■ Finally, the defendant contends that the minimum sentence is excessive and should be reduced. It is to be noted that the defendant received a fixed sentence in that he was to be imprisoned for four years to four years and one day. Our legislature has indicated that it favors all sentences to the penitentiary to be for an indeterminate term. Ill Rev Stats (1965), c 38, § 1–7(e). In People v. Jones, 92 Ill App2d 124, 128, 235 NE2d 379, 381 (1968), the court recognized as a sound guideline, in implementing this principle of indeterminacy, that the trial court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed. Furthermore, in People v. Lillie, 79 Ill App2d 174, 179, 223 NE2d 716, 719 (1967), the court noted that excessive minimum sentences could defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished and by destroying any incentive a prisoner might have to participate in the educational and rehabilitation programs provided in modern penal institutions.

■ We are of the opinion that the case at bar is an appropriate one for the exercise of our power found in Supreme Court Rule 615(b)(4) (Ill Rev Stats (1967), c 110A, § 615(b)(4)) to reduce the minimum sentence imposed by the trial court from four years to one year. The maximum sentence imposed remains at four years. It is to be noted that the defendant was sixteen at the time this offense was committed and had no prior felony convictions. Although the defendant was found guilty of

15

aggravated battery in the instant case, the shooting occurred accidentally during a struggle for a gun and was not intentionally inflicted. A sentence of one to four years follows the enlightened legislative intent that all sentences to the penitentiary should be for an indeterminate term and contains a "spread period" that will enable the defendant to gain his conditional freedom at a time in his life much earlier than under the original sentence.

The judgment is modified by reducing the sentence to a term of not less than one year nor more than four years in the State Penitentiary and as modified is affirmed.

Judgment modified, and as modified, affirmed.

BURKE and McCORMICK, JJ., concur.