THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT HARRIS *et al.*, Defendant-Appellants.

(No. 54936;

First District—March 30, 1971.

Thomas Grippando and Michael J. Polella, both of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Nicholas A. DeJohn, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McCORMICK delivered the opinion of the court:

Robert Harris and Otis Harris were charged with having committed the crime of aggravated assault, in violation of Ill. Rev. Stat. 1969, ch. 38, par. 12—2 (a) (1). Having had advice of counsel, they waived their right to trial by jury and pleaded not guilty. At the trial, Robert Harris was found guilty and sentenced to two years probation, with nine months to be served at the Illinois State Farm in Vandalia. On Otis Harris' motion for a finding of not guilty, the charge against him was dismissed. The following was brought out at trial:

On November 24, 1969, at approximately 7:00 P.M., the defendant, Robert Harris, and a group of seven boys arrived at an apartment building located at 4555 South Federal Avenue, in their search for individuals who had allegedly attacked the defendant two days earlier. They saw two men, Bobby Coleman and Maurice Upton, leaving the building, and one of defendant's companions [Charlie James], who was carrying a shotgun, approached Coleman, pointing the shotgun at his face. He told the group he had found one of the men who had "jumped" defendant, but the defendant shouted that he had the wrong man, that Coleman was not the one.

Maurice Upton testified that he was with Coleman at the time of the incident, and that James turned the gun on him, threatening to kill him, after being told that Coleman was not the man they wanted. Upton said he grabbed the weapon to push it away, and the defendant and others of the group jumped on him, pushing him and Coleman back into the building. The defendant and the group then left, and the police arrived. The defendant and Otis Harris were soon apprehended and taken to Upton's apartment where the defendant was identified by Upton, although he was not able to identify Otis Harris as a member of the group. Both Upton and Coleman identified Robert Harris at the trial, and Upton stated he remembered him because "he did all the talking." Officer August Jones testified that Coleman identified the defendant at the police station.

The defendant testified that he was with the group, but that he had not known that James had a shotgun. He further stated that they were looking for his earlier assailants merely to talk with them.

Three points have been raised in this appeal. First, it is urged that

defendant was denied a fair and impartial trial. When the State rested, the court granted Otis Harris' motion for a finding of not guilty, but denied a similar motion made by defendant, and found the defendant guilty. The court was advised that the defense had not rested, and the court instructed defendant's attorney to call his witness, at which time defendant was called to testify on his own behalf. After hearing his testimony and the final arguments of counsel, the court found the defendant guilty of the crime as charged.

Defendant now contends that the premature finding of guilty showed a bias on the part of the trial judge, and cites four cases in support of the contention: *People ex rel. Przyblinski v. Scott,* 23 Ill.App.2d 167, aff'd in 19 Ill.2d 500; *People v. Ojeda,* 110 Ill.App.2d 480; *Hartenstein v. Bindseil,* 164 N.Y.S. 102; and *Rosenfield v. Vosper,* 45 Cal.App.2d 365, 114 P.2d 29.

■■  While we agree that the cited cases stand for the proposition that when a trial judge prejudges a case before all the evidence is considered a new trial must be granted, we do not agree that the conduct of the trial judge in the instant case manifested the prejudice complained of by defendant. In each of the cited cases there were numerous statements made by the trial judges which clearly exposed their prejudiced attitudes. In the case before us, however, there were no statements made which would have indicated prejudice, or that would have shown anything more than the judge's mistaken belief that both sides had rested. The record clearly shows that when defendant's attorney advised the court that the defense had not rested, the trial judge promptly instructed him to call his witness. Unlike the cited cases, the trial judge made no comments that would have implied bias or prejudice, and his premature finding of guilt reflects nothing more than his mistaken belief that both sides had rested.

The second point raised in support of this appeal is that the evidence presented was not sufficient to warrant a finding that defendant was accountable for the conduct of Charlie James. With this contention we do not agree. Section 5—1 of the Illinois Criminal Code [Ill. Rev. Stat. 1961, ch. 38, par. 5—1] provides: "A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in Section 5—2, or both." Section 5—2 (c) provides, in pertinent part, that a person is legally accountable for the conduct of another when "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

In *People v. Washington*, 26 Ill.2d 207, the question of what constitutes aiding and abetting was construed by the Supreme Court at page 209, as follows:

"While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime. (*People v. Torres*, 19 Ill.2d 497; *People v. Thicksten*, 14 Ill.2d 132; *People v. Cione*, 293 Ill. 321.) Stated differently, circumstances may show there is a common design to do an unlawful act to which all assent, and whatever is done in furtherance of the design is the act of all, making each person guilty of the crime. *People v. Rybka*, 16 Ill.2d 394; *People v. Marx*, 291 Ill. 40.

■■ The accountability statute was also construed in *People v. Littleton*, 113 Ill.App.2d 185, where the court said, at page 189 of the opinion:

"A person may aid or abet without actively participating in the overt act or acts and evidence that the accused attaches himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common illegal purpose and will sustain his conviction as a principal for a crime committed by another in furtherance of the venture."

In the case before us there was ample evidence presented from which the trial judge could determine the defendant's approval and assent to the illegal design of the group to which he was attached.

It was brought out at the trial that the weapon used to threaten Coleman was a sawed-off shotgun. The admited purpose of the defendant and his group was to find the persons who had attacked the defendant two days earlier. When the defendant realized that the wrong man was being threatened by an armed member of the group, his reaction to seeing the shotgun was not one of surprise, but of concern that it might be used on the wrong person. When these facts are considered together, there is a strong suggestion that defendant was aware of the fact that James had a shotgun, and that defendant approved of and lent his support to the common design of the group.

■■ The third point defendant has raised is the question of the impropriety of the pre-trial identification procedure while in Upton's apartment. He contends that that procedure deprived him of his right to due process of law. A careful examination of the record discloses that neither

defendant nor his counsel at any time objected to the pre-trial identification procedure employed; therefore, defendant is precluded from now raising this objection. *People v. Harris*, 33 Ill.2d 389.

■■ It also appears from the record that the question of defendant's identity was never an issue. When he testified, he admitted being a member of the group, and that he had shouted that they had the wrong man. His testimony essentially corroborated that of Upton and Coleman. Assuming, for the sake of argument, that the identification procedure at Upton's apartment was improper, this is irrelevant, since defendant admitted those facts which were necessary to prove his participation in the illegal scheme. Defendant's identification at trial was entirely independent of and unrelated to the pre-trial identification of which he now complains. *People v. Robinson*, 42 Ill.2d 371.

Having carefully reviewed the record, and finding no error, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and STAMOS, J., concur.