THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE CANNON, Defendant-Appellant.

(No. 58819; ■■■■■■■■)

First District (1st Division)—March 18, 1974.

James J. Doherty, Public Defender, of Chicago (Marilyn Dershem Israel, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Eddie Cannon (defendant) was tried by the court without a jury for unlawful use of weapons (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4)); defacing the identification marks upon a firearm (Ill. Rev. Stat. 1971, ch. 38, par. 24—5), and unlawful possession of a firearm without having in his possession an owner's identification card issued to him by the Illinois Department of Public Safety (Ill. Rev. Stat. 1971, ch. 38, par. 83—2(a)). Defendant was found guilty and sentenced to concurrent terms of 5 months upon each charge.

Upon his appeal, defendant first raises a constitutional question regarding an allegedly illegal search of the automobile in which he was a passenger. Defendant also urges that the proof fails to show that he knowingly concealed a weapon and that he ever owned or possessed a weapon. In this connection, he contends that the State failed to prove beyond a reasonable doubt that the weapon in question was so close to him as to be readily accessible. Defendant also contends that the complaint charging unlawful use of weapons was void and that he was denied a fair and impartial trial.

In response, the People urge that defendant had no standing to object

to the allegedly unlawful search and seizure; and, in addition, that his fourth amendment rights were not violated. The People also contend that the evidence was sufficient to prove each of the charges beyond reasonable doubt; the complaint charging unlawful use of weapons was not void and defendant received a fair and impartial trial. We will consider each of the contentions but not in the order stated.

■■ Defendant first urges that the complaint charging unlawful use of weapons was void. Defendant was charged with knowingly carrying "concealed a firearm (in a vehicle) or (on or about his person)." This issue was never raised in the trial court by defendant, by preliminary motion or in any other manner. Therefore, he may raise the point for the first time in this court only if the complaint fails completely to charge commission of an offense so that it is void. (*People v. Bradley,* 12 Ill.App.3d 783, 786, 299 N.E.2d 99, and cases therein cited.) The Code of Criminal Procedure of Illinois sets out various formal defects in indictments, informations or complaints which may be the subject of amendment on motion of the State's Attorney. Among such defects are "[t]he use of alternative or disjunctive allegations as to the acts, means, intents or results charged." Ill. Rev. Stat. 1971, ch. 38, par. 111—5(f).

The only case cited by defendant to this point is *People v. Heard,* 47 Ill.2d 501, 266 N.E.2d 340. The complaint in *Heard* was patently uncertain. The entire complaint consisted of a number of alternatives which necessarily made it completely uncertain and therefore void. (See 47 Ill.2d at 504.) In *Heard,* the supreme court pointed out that a charge which follows the language of the statute defining the crime and uses the disjunctive, will be sufficient under some circumstances but not where the statute names "disparate and alternative acts, any one of which will constitute the offense." (47 Ill.2d at 504.) As an example of a sufficient charge, the supreme court cited *People v. Rosenfeld,* 25 Ill.2d 473, 185 N.E.2d 236, where the indictment charged that the defendants unlawfully "possessed or had under their control" a narcotic drug. In our opinion, the complaint in the case at bar is much closer to *Rosenfeld* than it is to *Heard.* In the case before us, the defendant was fully informed of the nature of the charge. His counsel seemed to have no problem in presenting a spirited defense. The complaint was in the language of the statute and we think that it certainly apprised defendant with more than reasonable certainty of the precise offense with which he was charged. See *People v. Harvey,* 53 Ill.2d 585, 588, 294 N.E.2d 269.

As regards the motion to suppress physical evidence made by defendant's counsel and heard before trial, a police officer testified that he stopped an automobile for failure to have brake lights. (See Illinois Vehicle Code, Ill. Rev. Stat. 1971, ch. 95½, par. 12—208(a).) The car

was occupied by the driver and two passengers, one in the right front seat and one in the rear seat. The police officer learned that the driver did not have a driver's license in his possession and he had no traffic ticket which might have acted as a temporary replacement. (See Illinois Vehicle Code, Ill. Rev. Stat. 1971, ch. 95½, par. 6—601.) The officer asked the driver to get out of the car. He then reached under the front seat on the driver's side where he found a loaded .32-caliber pistol. He then ordered the passenger in the front seat to leave the automobile. He reached under the front seat on the right side where he found a loaded .38-caliber pistol. The police officer then placed "everyone" under arrest. The officer testified that the defendant was the passenger on the right side in the front seat. Defendant testified, to the contrary, that he was seated in the rear on the passenger's side of the car. Upon hearing this evidence, the trial court denied the motion to suppress.

■■ Counsel for both sides have extensively argued the merits of the motion to suppress. We need not review the various cases thus cited. In our opinion, this situation is governed by two recent decisions of the United States Supreme Court: *U.S. v. Robinson,* 38 L.Ed.2d 427, 94 S.Ct. 467, and *Gustafson v. Florida,* 38 L.Ed.2d 456, 94 S.Ct. 488. In *Robinson,* the Supreme Court held that where a police officer had probable cause for custodial arrest of a defendant for operating a motor vehicle after revocation of his driver's license, a complete search of the defendant's person was legal and permissible. In *Gustafson,* the court held that, where defendant had been arrested for driving without a valid driver's license in his possession, a complete search of his person was valid and legal.

On oral argument, counsel for defendant sought to dissuade us from following *Robinson* and *Gustafson.* In situations concerning application of a more restrictive view of the constitutional rights of an individual than previously enjoyed, the reviewing courts of Illinois have traditionally followed the Supreme Court of the United States. As an example, note the Illinois Supreme Court decision in *People v. Lewis,* 34 Ill.2d 211, 215 N.E.2d 283, following the United States Supreme Court in *Preston v. United States,* 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881. And, note also the later action by the Supreme Court of Illinois overruling *Lewis* as set forth in *People v. Brown,* 38 Ill.2d 353, 231 N.E.2d 577, and *People v. Jones,* 38 Ill.2d 427, 231 N.E.2d 580. This step was taken by the Supreme Court of Illinois to accomplish conformity with the decision of the United States Supreme Court in *Cooper v. California,* 386 U.S. 58, 17 L.Ed.2d 730, 87 S.Ct. 788, which had theretofore modified the decision in *Preston.* It is both logical and necessary that this court

follow the precepts announced by the United States Supreme Court which is the final arbiter of Federal constitutional construction.

■ ■ Applying the principles of *Robinson* and *Gustafson* to the case before us, the officer had the right and the duty to stop the automobile which was without brake lights. In such case, the driver was committing a misdemeanor. Upon ascertaining that the driver had no valid license in his possession, it then became the right and duty of the officer to make a custodial arrest for this additional misdemeanor and consequently he had the legal right to effect a complete search of the driver's person. (See also *People v. Gilyard,* 124 Ill.App.2d 95, 102, 260 N.E.2d 364.) Continuing further, it then became the right and duty of the officer to make at least a cursory search of the immediate vicinity of the driver's seat. In our opinion, this type of search was not only authorized by law but it was essential to insure the safety of the arresting officer. By analogy, the Supreme Court of Illinois has followed the principle that, where a defendant has been legally arrested in his home, police may search the immediate area from which he could have obtained a weapon or even something that could have been used as evidence against him. (See *People v. Perry,* 47 Ill.2d 402, 407, 408, 266 N.E.2d 330, citing and commenting upon *Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034.) Recovery of the loaded pistol from the area within immediate control of the driver in turn rendered imperative the similar restricted search of the adjacent area beneath the other front seat.

We accordingly conclude that the trial court acted properly in denying the motion of defendant to suppress physical evidence. We need not consider other contentions bearing upon this point such as whether defendant had standing to raise the constitutional issue.

We will next consider the sufficiency of the evidence to prove guilt as to all three of the charges. After disposition of the motion to suppress, the police officer also testified that he had placed his initials upon the .38-caliber pistol and that the serial numbers had been obliterated from the weapon so that they could not be read. The officer then advised defendant as to his constitutional rights. Upon questioning, defendant told the officer that he did not have a firearm owner's identification card issued by the State of Illinois in his possession. The officer also testified that defendant was seated in the right front seat of the automobile. Defendant testified that he was seated in the rear seat of the automobile and that the passenger in the right front seat, a man named Taylor, left the car before he did. There was testimony by the officer and the defendant regarding the personal appearance and the clothing worn by Taylor and by defendant. Defendant was asked suggestively by his

counsel if he "put a gun in that car" or had "a gun in your hand at any time?" He responded categorically to each question, "No, I didn't."

The primary issue here is whether defendant had actual or constructive possession of the .38-caliber revolver beneath the right front seat. This fact would be essential to each of the three convictions. Necessarily implicit in the result reached by the trial court would be a determination that defendant was seated in the right front seat of the automobile beneath which the loaded .38-caliber pistol was found. A determination of truth of this fact presented the trial court with an issue of credibility. A mere conflict in the evidence does not justify us in reaching a different result than did the trial court on this factual issue. (See *People v. Reese*, 54 Ill.2d 51, 58, 294 N.E.2d 288.) We will, however, examine the issue as to whether or not defendant had actual or constructive possession of the weapon beneath the front seat.

It is first important to note the precise language of the pertinent statute. The proscribed conduct consists in carrying the firearm "concealed in any vehicle * * * or on or about his person." (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4).) Therefore, cases relied upon and cited by defendant such as *People v. Liss*, 406 Ill. 419, 94 N.E.2d 320, and *People v. Niemoth*, 322 Ill. 51, 152 N.E. 537, are inapposite here. These cases were decided under a former law which did not contain the decisive language "concealed in any vehicle." Note the explanation of this in *People v. McKnight*, 39 Ill.2d 577, 580, 237 N.E.2d 488.

■■ It is correct as argued by defendant that it was incumbent upon the People to prove possession of the weapon by the defendant, actual or constructive, and to prove scienter or knowledge that the gun was in the car. But, both of these essentials may be proved by circumstantial evidence. (See *People v. McKnight*, 39 Ill.2d 577, 581, 237 N.E.2d 488.) In this regard, the basic applicable theory is that "* * * there is no legal distinction between direct and circumstantial evidence as to the weight and effect thereof." (*People v. Robinson*, 14 Ill.2d 325, 331, 153 N.E.2d 65, and cases therein cited.) Any fact provable by direct evidence may also be proved by circumstantial evidence. In addition, upon another theory, circumstantial evidence may prove the existence of a common design to do an unlawful act and to show that the defendant assented to the commission of a crime and therefore aided and abetted. See *People v. Williams*, 132 Ill.App.2d 806, 809, 270 N.E.2d 144.

It is our considered opinion that the circumstantial evidence in this case is proof beyond a reasonable doubt of the guilt of defendant of unlawful use of weapons so that the finding of the trial court in this regard may not be set aside by this court. We base this conclusion upon the following authorities:

In *People v. McKnight*, 39 Ill.2d 577, 237 N.E.2d 488, the facts were basically similar and the same result was reached. We note, however, that in *McKnight* another passenger in the automobile had a gun upon his person and the defendant "made motions with his right hand and a dipping motion of the shoulder prior to being stopped; * * *." (39 Ill.2d at 581.) The gun in question was found under the driver's seat occupied by the defendant.

In *People v. Williams*, 132 Ill.App.2d 806, 270 N.E.2d 144, police stopped an automobile because of a noisy exhaust. They saw the butt of a .32-caliber pistol under the driver's seat. Defendant was on the passenger's side of the front seat and search disclosed a second revolver under his seat. The driver and defendant both denied knowledge of the guns. Three .32-caliber cartridges were found between the passenger's seat and the floor and five cartridges of .38 caliber were found on the driver's person. The court cited *McKnight* and affirmed the conviction. The same points raised by defendant in the case before us were advanced in *Williams*. The court there held that scienter was susceptible of proof by circumstantial evidence. Also, the court pointed out that even if defendant would have had to change his position to take the gun from under the driver's seat, that would not preclude a finding of guilty and defendant was found guilty as regards both weapons. The court also used the theory of accountability. (Ill. Rev. Stat. 1971, ch. 38, par. 5—1 and following.) The court stressed the fact that there was a gun under each of the front seats and that the two men were riding together in the automobile precisely as in the case at bar. These facts were held to create an "inference of the existence of a common scheme with defendant's approval and assent." 132 Ill.App.2d at 809.

In chronological order, the next decision is *People v. Zazzetti*, 6 Ill.App.3d 858, 286 N.E.2d 745. There, an automobile was halted for excessive speed. A police officer looked in at the driver's window and saw a portion of a revolver butt protruding from beneath the front seat on the passenger's side. That was the place occupied by defendant. Upon search, this revolver was found loaded and a fully loaded and cocked .32-caliber pistol was found beneath the driver's portion of the front seat. This court affirmed conviction for violation of the same statute involved · in the case before us. This court also supported the result reached on the theory of accountability. (See 6 Ill.App.3d at 863, citing Ill. Rev. Stat. 1971, ch. 38, par. 5—2.) The court specifically held the proof of knowledge adequate beyond reasonable doubt despite a denial by defendant. The court added the following language to this determination, 6 Ill.App.3d 858, 863:

"However, knowledge, scienter, may be proven by circumstantial

evidence. In the present case the State's evidence, if believed, established that defendant and Reynolds were traveling together in an automobile and that beneath the seating area occupied by each was a loaded weapon. We find this evidence standing alone to constitute a sufficient basis upon which to infer that each had knowledge of the presence of both weapons."

The decisive theory upon which *Zazzetti* is based was not that the officer noticed that defendant "bent over from the waist" (6 Ill.App.3d at 861) as he left the automobile, but the decision rested primarily on the remaining facts above quoted.

The next case is *People v. Bell*, 7 Ill.App.3d 625, 288 N.E.2d 253. It should be noted that *Bell* cites *McKnight* and *Williams*. Apparently the decision in *Bell* was reached by the Appellate Court for the Third District of Illinois without the citation of *Zazzetti*. In *Bell*, an automobile was stopped because its description was close to that of one involved in a shooting. The two defendants were in this automobile driven by a friend of theirs. Williams was on the passenger's side in front and Bell was behind him in the back on the right side. Search disclosed a loaded sawed-off shotgun and a .38-caliber pistol beneath the front seat on the passenger's side. The barrel of the shotgun was visible from the rear. There was an odor of gunpowder on the shotgun. The two defendants and the driver all denied that they had ever seen the guns before. The car was owned by defendant's mother. The court held that the evidence was ample to support a verdict of guilty and then made the following statement, 7 Ill.App.3d at 627:

"We believe the evidence was adequate to support the verdict. The guns were sufficiently accessible, being within easy reach of both defendants, to be considered in the possession of both of them, and there was ample circumstantial evidence to prove that they had knowledge of the presence of the guns. *People v. McKnight*, 39 Ill.2d 577; *People v. Williams*, 132 Ill.App.2d 806, 270 N.E.2d 144."

Defendant cites and relies upon four cases. A study of these authorities convinces us that they are inapplicable.

In *People v. Jackson*, 23 Ill.2d 360, 178 N.E.2d 320, the police executed a search warrant. They met defendant at the door. She was carrying a large handbag. When she saw the officers she turned, ran into the bathroom and locked the door. When she opened the door later, the purse was found lying open on the floor. Narcotics were found at the bottom of an air well beneath the bathroom window. The court held that where actual or constructive possession was shown, an inference of guilty knowledge could be drawn from the surrounding facts and circum-

stances. However, the court also held that the burden rested upon the State to prove that the defendant had "exercised some actual or potential dominion over the narcotics." (See 23 Ill.2d at 365.) In the case before us, the proof of potential dominion over the gun beneath defendant's seat was manifest and certain.

In *People v. Millis*, 16 Ill.App.2d 283, 252 N.E.2d 395, defendant was seated in the middle of the front seat of an automobile between the driver and another passenger. Two other persons were in the rear seat. The automobile was stopped and all persons were removed. An officer found two open cans of beer on the front floor of the car. He issued arrest tickets to the two men who had occupied the front seat but not to defendant. Defendant testified in some detail regarding the presence of the beer but stated that it had never been in her possession, that she had been offered some and she refused. Citing *Jackson* and other authorities, the court held that the fact of possession must be proved beyond a reasonable doubt and that proof of constructive possession required "a showing that the defendant had the immediate and exclusive control of the area where the items allegedly possessed were situated." (See 116 Ill.App.2d at 287.) The court pointed out that the beer cans could have been in the possession of any one of the three persons and that pleas of guilty to the charge of illegal possession of liquor by the two remaining persons who were in the front seat tended to negative possession by defendant. On the contrary, in the case before us, defendant had immediate and exclusive control of the area where the gun was located. The only other occupant of the vehicle had the same type of control over the area where there was another weapon.

In *People v. Crowder*, 4 Ill.App.3d 1079, 283 N.E.2d 342, the owner of an automobile was driving. Defendant Crowder was seated beside him in the front seat. Crowder was crippled and confined to a wheelchair due to an earlier injury. The occupants of the rear seat were Tramell, behind the driver, and Smith and Hoover in that order to the right. The automobile was stopped by the police because of a faulty headlight. Search disclosed a shotgun beneath the back seat to the rear of the driver, occupied by Tramell. A pistol was found beneath the driver's seat. All three of the defendants "denied knowing that the weapons were present in the automobile." (4 Ill.App.3d at 1082.) This contrasts with the case before us where no such denial was made by defendant. And, as this court specifically pointed out in *Crowder*, the concealed weapons there were not found under the seats of any of the defendants. 4 Ill.App. 3d at 1081.

In *People v. Cogwell*, 8 Ill.App.3d 15, 288 N.E.2d 729, defendant was found guilty of possession of shotgun shells. He was seated in the middle

of the rear seat between two other men. The shells were found on the left rear floor of the vehicle slightly to the left of the defendant and to the right of the man seated at his left. The court pointed out that the shells were as close to defendant as they were to the man immediately to his left. Only two of the shells were open to his view and the only evidence of possession, beyond the basic fact that defendant was a passenger, was the fact that the shells were near his feet. This court held that there was not sufficient evidence of constructive possession. By way of contrast, the case at bar does show constructive possession of the gun by defendant.

■■ It should also be noted that the defendant here gave no real or adequate explanation of the presence of the gun beneath his seat; he did not give affirmative testimony regarding his unawareness of its presence and he did not even deny that he had knowledge thereof. His categorical denials in response to two leading questions have little or no significance. The finding of the trial court that defendant had possession of the weapon with scienter is amply supported by the evidence beyond reasonable doubt. We will not disturb it. *People v. Catlett*, 48 Ill.2d 56, 64, 268 N.E.2d 378.

It follows necessarily that the evidence is sufficient to prove the charge of defacing the identification marks from the firearm. The statute provides that possession of a firearm where the marks of identification have been obliterated shall be prima facie evidence that the possessor has obliterated the same. (Ill. Rev. Stat. 1971, ch. 38, par. 24—5.) The evidence is uncontradicted that the serial number had been obliterated from the .38-caliber pistol found beneath defendant's seat.

■■ As regards the charge of possession of a firearm without having a firearm owner's identification card issued by the State of Illinois, the evidence also shows that after proper warnings, defendant stated to the police officer that he had never obtained such an identification card. The evidence is thus sufficient beyond a reasonable doubt to convict defendant upon all three charges.

Defendant finally urges that he was denied a fair and impartial trial. This claim is based upon three portions of the record. In the first, counsel for defendant objected to evidence concerning the .32-caliber revolver found beneath the driver's seat. The court pointed out that defendant had been charged in another complaint with possession of that gun. The court added, "Although probably he will not be found guilty on the other that was under the driver's side * * *." Counsel for defendant then apologized to the court for her lack of knowledge of the other complaint. Defense attorneys in this court urge that the statement by the judge that defendant probably would not be found guilty regarding the gun under the other seat showed that the judge had already determined

that defendant would be found guilty regarding the gun under his seat. Far from finding this conclusion to be a "natural inference" from the judge's statement, as contended by counsel, we find it to be a complete and unsupportable *non sequitur*.

▮▮ After the State rested, the trial court said: "All right, there will be a finding of guilty   *   *   *   wait a minute. Didn't you proceed?" The last question was directed to counsel for defendant who responded: "No, I think Mr. Cannon should testify in his own behalf." We find absolutely no prejudice of any kind resulting to defendant from this. The trial court immediately corrected, actually interrupted, his own statement regarding a finding and then gave counsel for defendant a full, fair and complete opportunity to present evidence.

In the third incident, after all parties had rested, apparently the State's Attorney remained mute. The trial court thereupon commenced to announce his finding. As soon as he used the word "finding" defense counsel interrupted and requested the right to argue. The court immediately granted this and counsel for both sides proceeded with oral argument.

We find no prejudice or detriment resulting to defendant from this incident. Apparently counsel for defendant waited for the State's Attorney to argue first. However, the State apparently did not wish to make an opening argument, as the first opening statement was made by defense counsel. This was a simple misunderstanding which caused no conceivable harm or detriment to the rights of defendant. Argument by counsel in a bench trial of a criminal case is not a matter of right but is "largely a matter of sound discretion of the trial judge." *People v. Manske*, 399 Ill. 176, 188, 77 N.E.2d 164. See also *People v. Sparks*, 9 Ill.App.3d 470, 473, 292 N.E.2d 447.

In this regard, the record presented here does not show that the trial court proceeded arbitrarily or with a closed mind. These are the charges made in the only cases cited by defendant to this point; namely, *People v. Johnson*, 4 Ill.App.3d 539, 281 N.E.2d 451, and *People v. Diaz*, 1 Ill.App.3d 988, 992, 275 N.E.2d 210. Both of these cases are factually inapposite. In *Johnson*, the dispatch of the trial was "precipitous." Also, there was no basis for reasonable belief by the trial judge that all of the evidence had been produced when he made his finding. (4 Ill.App.3d at 541.) In *Diaz*, the court specifically found that defendants "were denied a fair and impartial trial". 1 Ill.App.3d at 993.

▮▮ The applicable legal principle which disposes of this contention by defendant is that to justify reversal by this court the record must reflect some statement or conduct by the trial judge which demonstrates a prejudiced attitude. See *People v. Harris*, 132 Ill.App.2d 801, 803, 270 N.E.2d

232, cited and followed in *People v. Sparks,* 9 Ill.App.3d 470, 292 N.E.2d 447.

Defendant here had every possible opportunity to present his entire case and his attorney was given full right of comment and argument. Study of the entire record convinces us that the defendant had a completely fair trial before a careful, able and impartial judge. The judgment is affirmed.

Judgment affirmed.

EGAN, P. J., and BURKE, J., concur.