THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT FLEAGLE, Defendant-Appellant.

First District (3rd Division)  No. 83—1539

Opinion filed December 5, 1984.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and Elizabeth Loredo Rivera, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Robert Fleagle was charged by indictment with rape, attempted rape, deviate sexual assault and attempted murder. The rape charge was dismissed by the State before trial. The attempted murder charge was dismissed by the trial court upon a motion for directed finding. After a bench trial, the trial judge made these findings:

"I find the defendant guilty of attempt rape and attempt deviate sexual assault. There will be a judgment on the attempt rape. Finding for no judgment on the second count."

The order sentencing defendant to 30 months' probation recites that the defendant had been adjudged guilty of both attempted rape and attempted deviate sexual assault. Defendant's notice of appeal, however, is only from a conviction of attempted rape and the sentence of probation. The parties have addressed this record as an appeal from convictions of both attempted rape and attempted deviate sexual assault. We will do the same.

Defendant argues on appeal that: (1) he was not proved guilty beyond a reasonable doubt of attempted rape and attempted deviate sexual assault; (2) he was deprived of due process of law because the judge predetermined the case after the complaining witness' direct testimony; (3) the trial court abused its discretion by excluding relevant testimony establishing that defendant did not have the physical strength to attack the complainant; and (4) he is deaf, and the trial court deprived him of his right to be present at his trial and of his right to confrontation of witnesses by making inadequate provisions for his comprehension of the proceedings against him.

Fleagle is a 32-year-old man who has been gradually losing his hearing after a bout of meningitis. Complainant testified that she thought that he was totally deaf. She was a friend of his wife's and had known defendant for about a year prior to the incident in question. On June 11, 1982, at approximately 2 a.m., complainant returned home from Mugsy's Pub and while fully clothed fell asleep on a couch. Sometime after 3 a.m. she was awakened by a knocking sound. She got up and saw defendant at the door. She admitted him

to her apartment and wrote a note asking him why he was there. Defendant wrote back that the buses had stopped running to Summit, where he lived, and that he could not get a ride; he asked if he could stay at complainant's apartment. Complainant consented, provided that he slept on the floor. She gave him some bedding and went back to sleep on the couch.

The next thing complainant remembered was being unable to breathe. She realized that she was being smothered by a pillow. She saw defendant standing over her with one leg on her stomach and the other on the floor. Defendant struggled with her and choked her until she became unconscious. When complainant awoke, she was on her back with her dress up and her panties gone. Defendant was undressed and was kneeling between her legs. At this point, defendant choked her again; he then pulled complainant toward his erect penis.

Complainant testified further that she struggled and screamed to her neighbor for help. She managed to escape and ran out of her apartment, screaming that she had been raped. This part of complainant's testimony was corroborated by her neighbors and a police officer.

Subsequently, complainant was taken to the emergency room of McNeal Memorial Hospital and was treated by Nurse Doris Morris and Dr. Paul Volkman. Nurse Morris testified that complainant had scratch marks on her neck, her clothing was ripped and she was emotionally upset.

Fleagle testified that complainant was affectionate toward him and invited him to her house while they were in the Playground Lounge on the afternoon of June 10, 1982. This portion of Fleagle's testimony was corroborated by two witnesses, a friend and the owner of the lounge. Fleagle stated that neither he nor complainant took off their clothes while he was at her home. He denied that he exposed his genitalia to complainant and denied that he attempted to have sexual relations with her. He testified that any sexual contact that took place that morning was instigated by complainant.

## I

Defendant first argues that he was not proved guilty beyond a reasonable doubt of attempted rape and attempted deviate sexual assault, because the testimony of the complainant was inconsistent, incredible and impeached by other witnesses. We do not agree.

Defendant points to various inconsistencies in the complainant's testimony, particularly in regard to where she was during the 12 hours before the incident; how many drinks she had while at the

Playground Lounge; whether Ladawn Brown understood the complainant's cries that she had been raped and whether she told the police that she was attacked in the bedroom or in the living room. Most of the inconsistencies refer to collateral matters relating to how the incident occurred and are not probative of whether the defendant committed the crimes. See *People v. Triplett* (1981), 99 Ill. App. 3d 1077, 1085-86, 425 N.E.2d 1236; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 679, 424 N.E.2d 688.

The issue here is essentially a question of credibility, with the complaining witness relating one version of events and the defense witnesses portraying a completely different picture. Since the inconsistencies are minor, they affect only complainant's credibility and the weight given her testimony. It is well settled that in a bench trial, the credibility of witnesses and the relative weight to be given their respective testimony are for the determination of the trier of fact. (*People v. Williams* (1976), 44 Ill. App. 3d 143, 358 N.E.2d 58.) Indeed, it is not the duty or privilege of a reviewing court to substitute its judgment as to the credibility of witnesses. That duty is for the trier of fact, who heard the evidence presented and observed the demeanor of the witnesses. (*People v. Novotny* (1969), 41 Ill. 2d 401, 244 N.E.2d 182.) A reviewing court will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Watson* (1982), 106 Ill. App. 3d 315, 436 N.E.2d 7.) In our view, the testimony was not so unreasonable or improbable as to raise a reasonable doubt of defendant's guilt. For a reversal, defendant must show substantial evidence that will raise a reasonable doubt.

Defendant also contends that, although complainant's testimony may be sufficient to support his conviction for attempted deviate sexual assault, it is not sufficient to support his conviction for attempted rape. He claims that there is no testimony indicating that he ever made an overt move toward the genital area of complainant. However, we point out that complainant awoke to find that her skirt and slip had been pulled to her waist, her blouse was open and defendant was nude, kneeling between her legs. This evidence was sufficient for the court to find that defendant had the intent to commit rape and had taken a substantial step toward the commission of that offense. (See Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a).) The fact that the assailant's intent was not verbalized and that complainant successfully prevented consummation does not establish a lack of intent to rape. (*People v. Shelby* (1984), 123 Ill. App. 3d 153, 462 N.E.2d 761.) Accordingly, the trial court's finding will be sustained.

Defendant's reliance upon *People v. Pitts* (1980), 89 Ill. App. 3d 145, 411 N.E.2d 586, is misplaced. In *Pitts*, both defendant and complainant remained fully clothed while defendant obtained sexual satisfaction in a manner other than by intercourse. The court concluded that these circumstances did not warrant a conviction for the offense of attempted rape. Thus, *Pitts* is factually distinguishable from the instant case.

## II

Next, we consider defendant's argument that he was denied a fair and impartial trial. This is based upon two statements made by the trial judge which defendant claims indicate that the judge had prematurely found him guilty before the close of all the evidence. The first statement was made when defense counsel asked complainant, on cross-examination, whether she was aware that defendant and his wife were no longer living together. The State objected to this line of questioning, and, in a sidebar conference, defense counsel explained that he was trying to show the victim's motivation to lie. He argued that she brought these false charges in order to preclude defendant from possibly receiving custody of his child in a pending custody dispute between defendant and his wife. The judge overruled the State's objection and explained to defense counsel that:

"I'll let you show it. If you can show motivation I will let you show it, but I don't think that it can come out.

Unless she was a Sara Burnheart [*sic*] I think she was pretty upset when she was reliving the episode."

Defendant argues that here "the trial judge believed that the credibility of the complaining witness was unshakable" and that the judge had already decided defendant's guilt after complainant's direct testimony. We disagree.

■■ ■ A trial judge's remarks aimed at the clarification of the reasons for his rulings are legitimate and proper. (*People v. Houston* (1974), 21 Ill. App. 3d 209, 315 N.E.2d 192, *cert. denied* (1975), 420 U.S. 936, 43 L. Ed. 2d 412, 95 S. Ct. 1145.) A trial judge is also allowed to explain his rulings (*People v. Morgan* (1963), 28 Ill. 2d 55, 190 N.E.2d 755), and mere spontaneous remarks by a trial judge have been held nonprejudicial. *People v. Freeman* (1969), 113 Ill. App. 2d 7, 251 N.E.2d 310.

■ Here, the trial court's statement "I will let you show it, but I don't think it can come out" was merely an explanation of his reason for overruling the State's objection to that line of questioning. This statement, the judge's ruling and the surrounding text indicate

that although the judge had doubts about the value of defense counsel's question, he was willing to listen. This shows no premature finding of guilt.

■ The second incident occurred after the State rested its case in chief and arguments had been made on defendant's motion for a directed finding, when the judge then explained his ruling as follows:

"On the attempted rape, the motion for directed verdict is denied.

On the attempted deviate sexual assault, motion for directed verdict is denied.

On the attempted murder, the motion is sustained.

I do not believe he tried to kill her. I do believe he tried to rape her and perform a deviate sexual act."

This remark was an attempt by the trial judge to clarify and explain his midtrial ruling. (*People v. Houston* (1974), 21 Ill. App. 3d 209, 214, 315 N.E.2d 192; *People v. Morgan* (1963), 28 Ill. 2d 55, 63, 190 N.E.2d 755.) Following this, defendant had a full hearing, including the uninterrupted opportunity to present his entire case. We do not believe this statement shows that the trial judge prejudged the result.

In *People v. Cannon* (1974), 18 Ill. App. 3d 781, 791, 310 N.E.2d 673, after the State rested and before the defense had begun, the judge stated: "All right, there will be a finding of guilty *** wait a minute. Didn't you proceed?" Based upon these remarks, the defendant in *Cannon* argued that he was denied a fair and impartial trial. The appellate court held that there could be no prejudice from that statement because "[t]he trial court immediately corrected, actually interrupted, his own statement regarding a finding and then gave counsel for defendant a full, fair and complete opportunity to present evidence." (18 Ill. App. 3d 781, 791.) In the present case, we believe that defendant was not prejudiced by the judge's explanation of his finding, and that he was accorded a full, fair and complete opportunity to present evidence.

Defendant relies on *People v. Diaz* (1971), 1 Ill. App. 3d 988, 275 N.E.2d 210, where the trial judge pronounced defendant guilty three times before all the evidence was presented. The appellate court held that this rendered the trial which followed an empty formality and that defendant was denied a fair trial.

Defendant also cites *People v. Ojeda* (1969), 110 Ill. App. 2d 480, 249 N.E.2d 670. The trial judge in the instant case, unlike the judge in *Ojeda*, did not state that he believed complainant and would not believe anything defendant had to say. Nor did the judge pronounce

defendant guilty before the defense had rested as did the judge in *Diaz*. In viewing the record as a whole, we believe that the trial judge merely explained his reason for denying defendant's motion for a directed finding. (*People v. Morgan* (1963), 28 Ill. 2d 55, 190 N.E.2d 755.) Although his words may have been ill chosen, the trial judge merely expressed his opinion that the State had met its burden of proof by establishing a *prima facie* case for the court's consideration. Accordingly, we conclude that defendant was not prematurely found guilty and thereby denied a fair trial.

## III

Next, we consider defendant's argument that the trial court improperly and prejudicially limited the scope of direct examination concerning defendant's physical condition. Defendant contends that the trial court abused its discretion by excluding the testimony of Nancy Garmond and Mary Zehnder, because their testimony was relevant in establishing that defendant did not have the strength to attack the victim. From our reading of the record it is unclear whether the trial court excluded the testimony of Garmond and Zehnder.

■ However, assuming *arguendo* that the testimony was excluded, the judge did not abuse his discretion in granting the State's motion to exclude the evidence. Defendant argues that these witnesses' testimony was relevant to show that defendant did not have the strength to overpower complainant. We have consistently held that the trial court has wide discretion as to issues of relevancy and materiality. The judge may reject evidence which he determines to be of little probative value because of its remoteness, uncertainty, or conjectural nature. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14; *People v. Radford* (1967), 87 Ill. App. 2d 308, 232 N.E.2d 100.) This is a sufficient basis for the trial court's decision, and if it appears on the record there is no abuse of discretion, the reviewing court will not disturb the lower court's ruling. *People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.

■■ Applying these principles, we hold that the exclusion of the testimony of witnesses, Garmond and Zehnder, reflected a proper exercise of judicial discretion. Evidence showing what occurred on July 8 when complainant, accompanied by a male companion, encountered defendant has at best little probative value as to what occurred on July 11 when defendant and complainant were alone. *People v. Mosley* (1979), 68 Ill. App. 3d 721, 386 N.E.2d 545.

■■■ Defendant, citing *Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173, also claims that the court errone-

ously excluded Garmond's and Zehnder's testimony because it impeached complainant's testimony that she had never been to defendant's apartment nor had she seen him since the attack. We do not agree. Although testimony may be introduced to discredit a witness, this testimony must have the reasonable tendency to discredit the testimony of the witness on a material matter. A witness can never be impeached upon an immaterial matter. (*People v. Boulahanis* (1946), 394 Ill. 255, 68 N.E.2d 467.) The fact that complainant stated she had not seen defendant since the attack and the fact that Garmond and Zehnder testified otherwise are not contradictions of material matters bearing upon the trial issue as to whether defendant attempted to rape her on June 11, 1982. Even if the trial court erred in excluding their testimony, the error is harmless unless a reasonable doubt exists that the restriction could have contributed to defendant's conviction. (*People v. Scarpelli* (1980), 82 Ill. App. 3d 689, 402 N.E.2d 915, *cert. denied* (1981), 450 U.S. 915, 67 L. Ed. 2d 340, 101 S. Ct. 1357.) Since we conclude that no reasonable doubt exists that the alleged exclusion of this testimony could have contributed to the conviction of defendant, any error resulting from this restriction was harmless.

## IV

Lastly, defendant claims that the trial court violated his right to be present at his trial, as well as his right to confront witnesses. Specifically, defendant claims that he was denied a fair trial because, due to his deafness and due to the inadequate provisions made by the trial court for him, he was unable to understand the proceedings against him.

The record indicates that defendant was not totally deaf and could also read lips. Ruben Rodriguez, a close friend of defendant, testified that when he talked to defendant he would speak slowly and loudly and defendant would respond. Therefore, the trial court's provisions for the use of a tape recorder and extra time to confer with defense counsel appear to be reasonable. The extra time allowed his attorney to repeat, explain and review the testimony with him in a louder voice and at a slower speed. The recorder enabled the attorney to play back the testimony to defendant at a louder volume. Defendant then would be able either to hear what his attorney told him, read his attorney's lips, or hear the recorder. Under these circumstances, we believe defendant was provided "reasonable facilities" so as to comprehend the proceedings against him. *People ex rel. Myers v. Briggs* (1970), 46 Ill. 2d 281, 263 N.E.2d 109.

Moreover, defendant and his counsel appear to have invited the alleged error of which he now complains. The record indicates that defense counsel had discussed defendant's deafness with the judge in an earlier conversation. On the trial date, defense counsel stated to the judge that "we would like to use a recorder so that I could have an opportunity to refer to [defendant]." In addition, the judge afforded defendant and counsel extra time to confer between the direct and cross-examination of witnesses. Apparently, defendant agreed that these measures would be adequate. Throughout the trial, there was no hint that defendant was dissatisfied with the measures taken or could not understand the testimony. In light of this, it was entirely reasonable for the trial court to assume that the recorder and extra time were adequate. The court in *People v. Riley* (1964), 31 Ill. 2d 490, 496, 202 N.E.2d 531, reasoned that "[i]t is axiomatic that an accused cannot complain of error acquiesced in or invited by him." 31 Ill. 2d 490, 496.

There was no reason to call an interpreter as defendant now argues. Moreover, defendant discontinued use of the recorder and extra time, after all but one of the State's witnesses had testified. This was absolutely proper. *People v. Lane* (1980), 91 Ill. App. 3d 827, 414 N.E.2d 1249, and section 115—8 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 115—8) provide that a defendant may waive his right to be present during his trial.

Under these circumstances, we find no error in the steps taken by the trial court to protect defendant's right to confrontation of witnesses and to be present at trial.

For the aforementioned reasons the judgment of the trial court is affirmed.

Affirmed.

RIZZI, P.J., and McGILLICUDDY, J., concur.